Harry Roth et al., Plaintiffs, v. Harry Ahrensfeld et al., Defendants.
Harry Roth et al., Appellants, v. W. A. Jones Foundry & Machine Company, Appellee.

Gen. No. 40,389.

Opinion filed May 2, 1939.  Rehearing denied May 20, 1939.

ERNEST W. CLARK and EDELSON & PAULLIN, all of Chicago, for appellants; SIDNEY W. MANDEL and ALBERT LANGELUTTIG, both of Chicago, of counsel.

GEORGE A. BOSOMBURG, of Chicago, for appellee.

Mr. Justice Friend delivered the opinion of the court.

Plaintiffs filed a complaint in equity on behalf of themselves and all other creditors of the Crawford State Savings Bank by which they sought to enforce the constitutional liability of the stockholders of the bank. This appeal involves solely the question whether W. A. Jones Foundry & Machine Company, hereinafter referred to as defendant, is liable upon certain stock standing in its name upon the books of the bank on the date it was closed by the auditor of public accounts. The cause was referred generally to a master in chancery, who filed a special report with reference to the liability of defendant, recommending that a decree be entered in favor of plaintiffs and assessing defendant's liability in the sum of. $10,000. Plaintiffs appeal from an order of the court sustaining exceptions to the master's report and dismissing the complaint for want of equity as to this defendant.

Upon the hearing counsel entered into a stipulation as to the essential facts. From this stipulation and evidence adduced before the master, it appears that Warren G. Jones had been the owner of 172 shares of the stock of the Crawford State Savings Bank. He also was a director of the bank. December 31, 1930, he transferred 100 of these shares to defendant, W. A. Jones Foundry & Machine Company. Among the records of the bank was found a stock certificate stub, showing that defendant was a stockholder of the bank from December 31, 1930, to the date of the trial. Jones was president and general manager of defendant, and owned 19,480 of the 23,000 outstanding shares of defendant's common stock and had voting control of defendant company. Most of the preferred shares were held by others. The company was substantially a family corporation and Jones was commonly known and referred to. as the "boss." He operated the com-

pany and was its directing head. When Jones effected the transfer of 100 of his shares of the bank stock to defendant December 31, 1930, he directed the bookkeeper to set up a credit on its books in his favor of $20,000, and proper entries were immediately made on defendant's books, evidencing the acquisition by it of the 100 shares of bank stock.

The bank was closed by the auditor of public accounts January 15, 1931. Thereafter this suit was instituted and defendant was subsequently joined as a party to the proceeding and summons was served on it January 12, 1932. It was not until almost six months after the service of summons, namely, July 1, 1932, that a resolution was passed with the unanimous consent of the directors, including Jones, reciting that the transfer had been made without the knowledge, authority or approval of the board of directors; that it had not been ratified by the board; that it was outside the scope of the corporation's powers; and accordingly rescinding the credit of $20,000 theretofore given Jones on the books of the company as of December 31, 1930, by cancellation of a corresponding charge against him for the same amount. After the transfer of the stock by Jones to defendant, liabilities accrued in favor of the creditors of the bank in the amount of $276,289.49, all of which remained unsatisfied at the time the bank was closed, and it is urged that these deposits were made on the strength, in part, of defendant's stock holdings of record.

Although 25 separate exceptions were filed to the report of the master and sustained by the court, it will serve no useful purpose to discuss them in detail. The salient question presented is whether the transfer of shares as between Jones and his company may be set aside as against innocent creditors of the bank, who in depositing their funds had the right to rely on defendant's ownership of 100 shares of the bank stock.

Section 6 of Article XI of the Constitution of this State (Ill. Rev. Stat. 1937, p. 57 [Jones Ill. Stats. Ann. Vol. 1, p. 473]), under which plaintiffs seek to charge defendant, provides: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." *Golden v. Ellwood,* 299 Ill. 73, holds that "no one but an actual stockholder can be held to such liability." The authorities are also in accord in holding that the relation of a stockholder to a corporation is one of contract, either express or implied (*Rosenfeld v. Horwich,* 221 Ill. App. 304, 311, 319), and is read into the contract of purchase by operation of law whenever a share of stock is acquired. (*Heïne v. Degen,* 362 Ill. 357.) In reliance upon these general principles of law, defendant takes the position that it never became a stockholder and could not have acquired this stock without the knowledge and consent of its board of directors; that the directors were unaware of the transfer and never consented thereto or ratified the transaction; that Jones had never before transferred any stocks or bonds to the defendant; that the market price of the stock at the time of the transfer was approximately $150 a share, and that the directors would not knowingly have consented to the transfer of 100 shares of stock to the corporation at $200 a share, when they could have bought the stock if they had desired to acquire it at a substantially lower figure; that Jones's action in transferring the 100 shares of the bank stock to defendant was improper, and having been afterward set aside as between Jones and the corporation plaintiffs cannot hold defendant liable as a stockholder of the bank.

It appears from the testimony of some of the directors that although the stock transferred by Jones

to defendant appeared on the records of the company immediately upon its consummation, and continuously thereafter until the transaction was rescinded, the directors paid no attention to the books of the company and did not take cognizance of the transfer until July, 1932. The master found, however, that because of certain pertinent evidence adduced before him the directors and officers of the corporation are deemed to be conclusively bound by the entries of its record books, and that it was their duty to examine them so as to become familiar with the same, and that plaintiffs had the right to rely implicitly on the books of the bank and to enforce a constitutional liability against those persons disclosed by the regularly kept books of the bank to be its stockholders.

The pertinent circumstances upon which plaintiffs base their contention that defendant's directors must be presumed to have known of the stock transferred by Jones to the company may be briefly summarized as follows: Aside from the actual transfer of the stock by Jones to the corporation, an entry was made in defendant's journal book debiting and charging the account known as "Stocks and Bonds," with the sum of $20,000, and crediting the account of "W. G. Jones, Accounts Receivable," in a like sum. The books contain also an extension to support these entries, as follows: "100 shares Crawford Bank Stock taken over from W. G. J. at $200 per share, and credited to W. G. J. per his order.' The master found from uncontradicted evidence that defendant's balance sheet as of December 31, 1930, appended to its federal income tax report for that year, was examined by a qualified auditor who testified that one item thereof, indicating ownership of defendant's stocks and bonds, bears a statement to the effect that it includes 100 shares of Crawford Bank stock. This auditor's examination further discloses that as of June 30, 1932, an entry was made in defendant's journal crediting the account labeled,

"Reserve for Crawford Bank Items," and debiting the "Earned Surplus Account." This entry bears the following supporting extension: "To set up reserve against Crawford Bank items except for the 20% dividend on deposit account." As explanatory of this last item, it appears from the record that defendant caused to be filed in the liquidation proceeding of the Crawford State Savings Bank, General No. B–214832, its certain claim for moneys held on deposit by it in the bank. An order was entered in that cause March 4, 1931, enjoining William J. Rathje, receiver, from paying any dividends upon the accounts of any stockholders of the bank. Thereafter, July 8, 1932, pursuant to defendant's verified petition filed in the bank liquidation proceeding, an order was entered directing the receiver to pay defendant a present dividend of 20 per cent, as well as all future dividends that might be declared, and the order provided that these things should be done "without prejudice to the question as to the proper ownership of a certain certificate of one hundred (100) shares of common stock of the Crawford State Savings Bank that appears to have been issued to W. A. Jones Foundry & Machinery Company on, to-wit, the 31st day of December, A. D. 1930." It thus appears that in addition to the entries made on defendant's books immediately after the transfer of the stock, recognition of the transaction is found both in the corporation's audit reports for 1930 and 1931, and in subsequent entries in defendant's books, and it is difficult to believe that the directors, who are charged with the responsibility for conducting defendant's affairs, could have been entirely ignorant of the fact that the company's records showed ownership of 100 shares of the bank stock from December 31, 1930, continuously until July 1, 1932, and that its audits and books treated that stock as belonging to defendant during this entire period.

The disclaimer of the directors of any knowledge of the transaction until July, 1932, is extremely difficult of contradiction by competent evidence, for as plaintiffs argue strangers are never invited to the meetings of directors and stockholders, and when a corporation seeks to avoid liability through proceedings enacted within the confines of its own directors' meetings, third persons have no way of disproving the lack of knowledge of individual members of the board. It is for this reason that courts have generally held that corporate directors are in duty bound to inform themselves of the company's affairs, and are presumed to know the condition of the corporation, its business, receipts, expenditures and the general facts which reflect the condition of the business as shown by entries on its record books.

In *Mamerow v. National Lead Co.*, 206 Ill. 626, the question arose as to whether directors who were also guarantors on moneys and obligations which might become due from the corporation to its creditors in the course of trade were chargeable with notice of the financial condition of the company, and the court held that where the guarantors had notice and information through an independent source, or where it is their duty under the law to take notice, a creditor is not required to serve notice of default on the guarantors because as directors it was their duty to know the liability and financial condition of the company and they were charged with notice of default. *Hunt v. Rosenbaum Grain Corp.*, 355 Ill. 504; *Hill Co. v. Barmore*, 220 Ill. App. 222, 230, are to the same effect.

In the case at bar defendant's books promptly reflected the transaction concerning this stock, and the directors, who are presumed to have known of the transaction because of the circumstances hereinbefore set forth, stood by and did nothing until defendant was sued, more than a year later. We are not called upon

to decide whether defendant might have avoided the transaction as to plaintiffs if it had acted promptly, because the evidence discloses that it did not act promptly or diligently, and under the circumstances we think the continued silence of the directors amounts to a ratification.

There are numerous decisions in this State and other jurisdictions which clearly establish the proposition that one who has been induced by fraud, either of the bank, its officers or third persons, to become stockholders of the bank, cannot avoid his liability to creditors of the bank on that ground. (*Mundell v. Cravens,* 267 Ill. App. 447, 451; *Lewis v. State ex rel. Schull,* 177 Okla. 399; *Scott v. Deweese,* 181 U. S. 202.) Plaintiffs argue with considerable force that it would follow *a fortiori,* that where the fraud claimed by defendant was not participated in by the bank, its officers or any other person than the one whom defendant has vested with the title and powers of president and general manager of the company, the defendant cannot avoid responsibility to innocent third persons.

The law is well settled that one who becomes a stockholder involuntarily or through some fraud practiced upon him ''is nevertheless estopped as against creditors to deny that he is a shareholder, if, at the time the rights of creditors accrued, he voluntarily occupied and was accorded the rights appertaining to that relation. . . . A very different rule of diligence is required between him and the creditors than is required as between him and the corporation. It is his duty to use a high degree of care and diligence to see that creditors are not misled by his conduct.'' (*Bartlett v. Stephens,* 137 Minn. 213, and numerous other cases reviewed in *Rosenfeld v. Horwich,* 221 Ill. App. 304.) In the *Stephens* case, the court suggested that a stockholder might relieve himself from liability if he ''takes seasonable steps, while the corporation is a going concern,

to rescind and to purge the corporation records of his name as a stockholder," (citing numerous cases). Undoubtedly, if the directors had acted promptly when they learned that Jones had transferred this stock to the corporation, as they say, without their knowledge and consent, this proceeding would have presented an entirely different aspect, but under the circumstances hereinbefore set forth we are impelled to hold that they must have had actual knowledge that as a matter of law they are presumed to have been familiar with the records of the company as reflected in its audits and books, and that their silence for more than a year and until summons was served upon the company amounted to a ratification.

Aside from the principal question involved in this proceeding, it is urged by defendant that the acquisition of the bank stock by defendant was ultra vires, and that inasmuch as the transaction took place prior to the enactment of the business corporation law in 1933, defendant should be allowed to set up the defense of ultra vires. This position is untenable because, as the master found, the General Corporation Act (ch. 32, sec. 1, *et seq.*, Cahill's Ill. St. 1931) which became effective in 1919, was in full force and effect at the time of this transaction. By section 7 of that act domestic corporations are given the right to hold stock in other corporations.

The only other point urged by defendant is that it was error for the master, after rendering his general report, to complete the hearing pending before him concerning the liability of defendant. The record discloses that the master filed his general report in July, 1935, and an order was entered therein August 3, 1935. There had been a general order of reference covering the question of defendant's liability, and in the decree entered on the latter date it was recited that all evidence had not been heard by the master on the prior

reference as to certain defendants, and the decree contains a specific statement referring to the claim against W. A. Jones Foundry & Machine Co. and provides that the court retain jurisdiction to entertain further proceedings and orders pertaining to this defendant. In view of the record the argument of defendant that the master lacked jurisdiction to hold any further hearings and to make a supplemental report without re-reference or authority from the court is untenable. Moreover, defendant proceeded to a hearing, and if there was any validity to the objection it has waived the same.

During the pendency of this cause defendant moved to dismiss the appeal. That motion was reserved to the hearing and it is herewith denied.

From what has been said we are of the opinion that the master properly found and recommended a decree fixing the liability of defendant at $10,000, and that the court erred in sustaining defendant's exceptions to the master's report. Therefore the decree of the superior court is reversed and the cause is remanded with directions to enter a decree in accordance with the recommendations contained in the master's report.

*Decree reversed and cause remanded with directions.*

SCANLAN, P. J., and JOHN J. SULLIVAN, J., concur.