PYLE & McCALLISTER, of Carmi, for appellants.

DONOVAN D. McCARTY, of Olney, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiffs appeal from a decree of the circuit court of Gallatin County entered September 18, 1956, dismissing their suit to set aside a mineral deed, by which plaintiffs conveyed a one-quarter interest in the oil, gas and other minerals underlying their farm land to defendant Leland Fulkerson, and a second deed, by which Leland Fulkerson conveyed a one-half interest in the minerals, which he had obtained from plaintiffs, to John Matherly, the other defendant in this case.

Plaintiffs' complaint alleges that Leland Fulkerson, acting for himself and John Matherly, obtained the deed on December 7, 1954, by falsely representing to plaintiff, Fred J. Johnson, that he was acting on behalf of certain lessees under an oil-and-gas lease on plaintiffs' farm land, and that the deed was a release for damage done by the lessees in drilling wells upon plaintiffs' land. The complaint alleges that Fred Johnson signed the deed under the belief that it was such a release and received $1000 for it and no more; that defendant, Leland Fulkerson, caused him to become intoxicated before securing his signature, and induced him to affix to the deed, not only his own signature but also that of his wife Hallie Johnson; and that at the time of

signing he was without his glasses and could not read the instrument. The complaint further alleges that Leland Fulkerson subsequently conveyed one half of the mineral interest so obtained, to John Matherly, pursuant to a conspiracy between both defendants to defraud plaintiffs of their property.

Defendants denied the material allegations of the complaint and alleged that Fred Johnson offered to sell the one-quarter interest to Leland Fulkerson for $2500; that Leland Fulkerson paid Fred Johnson $1500 in cash prior to the execution of the deed and $1000 by check at the time of execution; that neither defendant had any knowledge that Fred Johnson affixed his wife's signature to the deed without her knowledge or consent; and that Fred Johnson was aware that he was executing a mineral deed and not a release for damages.

After a hearing, the circuit court of Gallatin County found that Fred Johnson conveyed his interest to Leland Fulkerson, for good and sufficient consideration; that the deed of conveyance was executed and delivered by Fred Johnson without fraud; that Fred Johnson signed the name of his wife to the deed without any legal authority from her and that the interest conveyed thereby comes solely from the interest of Fred Johson in the minerals, subject to the inchoate right of dower of Hallie Johnson, his wife. The decree dismisses plaintiffs' suit for lack of equity and orders the respective rights of the parties accordingly.

The principal question presented on this appeal is whether the court correctly found absence of fraud. Apart from the testimony of Andrew Bosaw, a notary public, in whose presence Fred Johnson signed his name to the deed, the question whether there was any fraud rests largely upon whose testimony, Johnson's or Fulkerson's, ought to be believed. This is Fred Johnson's story: Shortly prior to December 7, 1954, he met Fulkerson, a driller for the oil-and-gas lessees, several times while drilling was in

progress on land across the road from his farm; that he never offered to sell any royalty to Fulkerson; that on December 7, 1954, Fulkerson picked him up in his car when Johnson was coming back with some groceries from Omaha; that Fulkerson then told him that he had some checks to deliver to various individuals; that Johnson had had several drinks of whiskey already; that Fulkerson drove him to New Haven where they drank some beer; that Fulkerson then told him that he was acting on behalf of Duncan Drilling Co. which had already drilled on Johnson's land and that he had a check for him for $1000 in payment for damage done in drilling upon his property but that he must sign a release for the damage; that Fulkerson persuaded him to sign his wife's name to the "release"; that they then went to Andrew Bosaw's where he signed the instrument; that he had no glasses and could not read without them; that he borrowed Bosaw's glasses to sign; that he did not read the instrument nor did he have it read to him; and that Fulkerson gave him a check for $1000 at that time but had never given him any cash before or since.

Leland Fulkerson's testimony was that Fred Johnson first approached him wishing to sell one fourth of his mineral rights in the latter part of November, 1954; that he wanted $2500 for it, but that he wanted half or more in cash; that approximately two or three days before December 7, 1954, Fulkerson caused his attorney at Olney, Illinois, to procure the legal description of the land and prepare a deed; that he had already paid Johnson $1500 in cash, taking no receipt therefor; that he then gave the deed to Johnson; that on December 7, 1954, Johnson brought the deed to him at the drilling site, already signed by Mrs. Johnson, and declared himself willing to execute it; that they went to Bosaw's where Johnson signed the deed stating that Mrs. Johnson was sick and could not be there. Fulkerson also testified on examination under section 60 of the Civil Practice Act, that Johnson had his

glasses with him and had read the deed, but later he retracted this story and stated that Johnson borrowed Bosaw's glasses to sign but that Bosaw read the deed aloud up to the point where it said "In consideration of ten dollars."

Bosaw, the notary, testified that Mrs. Johnson's signature was on the deed when he first saw it; that both Johnson and Fulkerson said that she was home sick; that he read the deed aloud down to where it said "In consideration of ten dollars"; that Johnson borrowed Bosaw's glasses to sign the instrument at which time he did not smell any intoxicating liquor on Johnson's breath, nor was Johnson loud or noisy; but that on another occasion, when he was in his presence, Johnson was noticeably intoxicated and he was boisterous and disorderly.

When Johnson and Fulkerson completed this transaction in Bosaw's office, they returned to the farm across the road from Johnson's where the latter was conducting the oil-drilling operation. Several of Fulkerson's workers testified that the executed document was read aloud in the presence of Johnson, and that he then made no claim that the payment was for damages, and that Johnson freely discussed the sale of a fraction of his mineral rights.

In support of plaintiffs' case, there appears the testimony of both plaintiffs, their two sons, a neighbor farmer and his wife, a blacksmith, a minister, a car salesman, a grocer, and a drinking companion. There was a unanimity in their testimony that Fred was pretty much of an alcoholic. However, not one testified that he knew whether or not he was under the influence of intoxicating liquor at the time of the involved transaction. The closest approach to this was that Fred was drunk almost every day.

Both plaintiffs and defendants advance contentions that cause considerable strain on one's credulity. Fulkerson testified that he had procured the $1500 and $1000 through a loan from a bank in Olney, Illinois, and that his wife signed the note with him. It is strange that Fulkerson did not

produce some corroborating evidence as to this transaction. The agent of the bank with whom the loan was negotiated could have supplied conclusive proof on this phase of the case. It is also rather unusual for one to deliver $1500 in currency to someone almost a stranger without obtaining a receipt, especially when representing a third person interested in the transaction. It is odd, to say the least, that Fred Johnson—needy and admittedly an alcoholic constantly frequenting taverns in a small community—suddenly finding himself enriched to the extent of $1500 in cash, exhibits this wealth to no one. So far as the record indicates, his prosperity was completely concealed. Further doubt about this cash transaction is claimed to reside in the fact that Johnson did, almost immediately, deposit the check in the local bank, while the $1500 was never deposited there.

This observation has a bearing on Fulkerson's credibility only, for there is no claim of inadequacy of consideration. In the absence of a showing of fraud, mere inadequacy of consideration is not ground for equitable relief. (*Stoke* v. *Wheeler,* 391 Ill. 429; *Finney* v. *White,* 389 Ill. 374; *Logue* v. *Von Almen,* 379 Ill. 208.) Moreover, the record contains no proof of the value of the interest involved.

We find it difficult to believe Johnson's story, also, that he thought he was being paid the $1000 in consideration for the damages he suffered as a result of the oil-drilling operation. Johnson was cross-examined sharply on this issue, and his testimony is most unconvincing. At the most two or three acres of lespedeza is involved. When land will not grow any other crop, farmers often try lespedeza, or occasionally it is planted to stop erosion on rough land.

We feel that the chancellor was justified in his finding that Johnson was not under the influence of intoxicating liquor at the time the questioned deed was executed. Even though we might have doubts of Fulkerson's candor in some

respects, the record contains much corroboration on important details. That the execution of the mineral deed was not procured as a result of false representation has ample support. One seeking the cancellation of a deed on the ground of fraud has the burden of proving the allegation of fraud by clear and convincing evidence. (*Finney* v. *White*, 389 Ill. 374.) A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations, he is chargeable with knowledge. If he does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations. *Dickinson* v. *Dickinson*, 305 Ill. 521, 137 N.E. 468.

The evidence is clear that Fred Johnson made no attempt to read the instrument after he borrowed Bosaw's glasses, nor, according to his own testimony, did he make a request that it be read to him. His sole excuse for his failure to do so is that he was too drunk to exercise the care which the law requires of him.

We have repeatedly held that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court, unless the findings are manifestly against the weight of the evidence. Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a jury's verdict. These cardinal principles are especially controlling in this case. The chancellor here not only was able to observe and hear the witnesses, but was conversant with local conditions, the customs and economies of the farm and oil industries, the value of farm land and farm crops. His position of advantage in a search for the truth is infinitely superior to that of a tribunal where the sole guide is the printed record.

The decree entered is affirmed.

*Decree affirmed.*