JAMES L. SOULES, Plaintiff-Appellant, *v.* GENERAL MOTORS CORPO-RATION, Defendant-Appellee.—(MEL BISHOP OLDSMOBILE, INC., Defendant.)

Fourth District   No. 15131

Opinion filed April 25, 1979.

TRAPP, J., dissenting.

Frank H. Byers, of Decatur (Byers & Byers, of counsel), for appellant.

Davis & Morgan, of Peoria (John C. Mulgrew, Jr., and William R. Kohlhase, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff James L. Soules appeals the June 30, 1978, order of the circuit court of Macon County which (1) upon motion of defendant General Motors Corporation, dismissed his first amended complaint against that defendant, (2) denied him leave to file a second amended complaint, and (3) entered judgment for defendant.

The allegations of the first amended complaint concern the grant of an Oldsmobile dealer franchise by defendant to Mel Bishop Oldsmobile, Inc. Count I alleged fraudulent representation by defendant to plaintiff concerning the franchisee's original and continuing financial condition. The other count, count II, alleged negligent misrepresentation. The trial court dismissed the complaint for the reason that the record showed as a matter of law that plaintiff was not justified in relying upon the representations ascribed to defendant. Defendant seeks to uphold the trial court's ruling upon that basis and upon the theory, as presented in its motion, that the complaint failed to allege a causal relationship between any misrepresentation by defendant and any damage to plaintiff. Plaintiff maintains that the complaint stated a cause of action not negated by an affirmative matter set forth in defendant's motion.

Counts I and II alleged the following: In March of 1973, Mel Bishop sought to acquire defendant's existing Oldsmobile franchise in Alton, Illinois, by purchasing the existing franchisee's assets and securing a new franchise agreement with defendant. Defendant had a contractual policy

of requiring certain minimal financial requirements which varied from one franchise to another. The "minimum owned net working capital" for this franchise was $134,000. Bishop could not meet that requirement and sought financial backing from plaintiff. In March 1973, plaintiff submitted an "Application for Approval of a Financial Investment in an Oldsmobile Dealership." Thereafter, defendant approved Bishop's request and entered into a franchise agreement with him. In reliance on defendant's oral representations that Bishop met or exceeded its minimum franchise requirements, in May 1973, plaintiff invested $50,000 in purchasing capital stock and loaned Bishop $75,000 to acquire the franchise business location. Also in reliance on defendant's oral representations that the franchisee met both defendant's original and continuing financial requirements and in reliance on defendant's integrity, plaintiff was induced to guarantee loans taken by Bishop in the operation of the franchise. During this time, defendant knew that Bishop had not met the minimum or continuing financial requirements, that the franchisee's periodic financial reports were false and that plaintiff did not have actual knowledge of the above. Plaintiff was ignorant of the fact that Bishop failed to meet the original or continuing financial requirements until sometime in 1976 or 1977 when he obtained a partial copy of the franchise agreement. Prior to that he relied on defendant's oral representations and the fact that defendant awarded the franchise and permitted its continued operation.

On or about May 22, 1975, defendant induced or caused Bishop to prepare a letter purporting to terminate the franchise agreement, to forge its execution by the corporate secretary, and to deliver it to defendant. The termination was not required under the terms of the franchise agreement. Defendant knew or should have known that the corporate secretary's signature was forged and that plaintiff had no prior knowledge of the letter. Plaintiff was not aware of the termination until defendant orally advised him that the franchise had been withdrawn and the agreement terminated.

Each of the counts alleged that defendant's conduct caused the unnecessary termination of the franchise agreement and caused plaintiff "to suffer irreparable damage to his good name, credit and business reputation."

Plaintiff's application, his financial statement, the franchise agreement and the termination letter were attached as exhibits and incorporated in the first amended complaint. Exhibits attached to the motion to dismiss included a stockholder's agreement between Mel Bishop Oldsmobile, Inc., Mel Bishop and plaintiff, corporate minutes, and a compensation agreement, all of which show that plaintiff was a director and major stockholder of the corporation which operated the franchise.

In *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89, 91,

the court stated one element of misrepresentation to be that "the person to whom the statement is made must believe and rely on it, *and have a right to do so*" (emphasis added). There, a tort action was brought for misrepresentation arising out of a land sale. The defendant seller advertised the land as containing 26 acres plus or minus when in fact it contained only 18. The appellate court reversed a judgment for the plaintiff ruling that as a matter of law neither *scienter* nor plaintiff's justifiable reliance on the statement of quantity of the land had been proved. Plaintiff had been on the land and his lawyer had been given a photostatic copy of a survey of the land. The court noted that the defendant did not possess any knowledge of the acreage involved superior to that of the plaintiff.

In *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229, the court on appeal affirmed the trial court's judgment *for defendant on the pleadings*. The action sought damages for fraud arising out of certain real estate dealings between the parties. The pleadings showed the following: Defendant, an attorney, had represented plaintiffs in real estate and business transactions. In 1945, one of the plaintiffs and another person acquired a mortgage on some real estate. When the owner died, they and defendant purchased the property. They later sold it and took a purchase money mortgage. In 1954, differences arose between plaintiffs and defendant and they became involved in litigation, in the course of which they reached a settlement whereby plaintiffs received certain other property and turned over to defendant their interest in the mortgage. Plaintiffs executed a general release. Two buildings were located on the mortgaged property. In 1945, the mortgagors held only a long-term leasehold on the property on which the larger building was located. The other building and property were owned in fee simple. Plaintiffs contended that defendant, knowing the state of the title, erroneously advised them that their mortgage was entirely on a leasehold, thus inducing them to relinquish their interest as cheaply as they did.

The supreme court concluded that the plaintiffs had ample opportunity to learn of the true state of facts and were precluded as a matter of law from relying on defendant's assertion concerning the status of their mortgage. The court noted prior similar reasoning in *Johnson v. Fulkerson* (1957), 12 Ill. 2d 69, 145 N.E.2d 31; *Bundesen v. Lewis* (1938), 368 Ill. 623, 15 N.E.2d 520; and *Dickinson v. Dickinson* (1922), 305 Ill. 521, 137 N.E. 468.

On the other hand, in *MacAuley v. Rickel* (1968), 96 Ill. App. 2d 283, 238 N.E.2d 603, a suit partly seeking damages for misrepresentation arose over the sale of a car wash business. Evidence indicated that the defendant seller had knowingly misstated the profitability of the business to the plaintiff buyer. A money judgment for the plaintiff was permitted

to stand although plaintiff was a business-wise accountant who had failed to examine the books of the business he was purchasing. The appellate court concluded that examination of the books would have been futile because the business was a division of a larger business and was used to experiment with equipment and to train employees. Thus, its books would not have revealed whether defendant's representations were true. The court noted that there as distinguished from *Broberg* the defendant seller did have superior knowledge of the matters set forth in the representations.

A leading authority in the field of torts notes a change in the attitude of courts on the question of justifiable reliance and states,

> "It is now held that assertions of fact as to * * * the financial status of corporations, * * * may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult, * * * but likewise where the falsity of the representation might be discovered with little effort by means easily at hand." (Prosser, Torts §108, at 717-18 (4th ed. 1971).)

No substantial move in this direction is shown by Illinois decisions but *MacAuley* indicates some relaxation in the stringency of the *caveat emptor* doctrine of the past.

In the instant case plaintiff alleges and places great reliance on his lack of knowledge about the operation of the franchise even though he was a director. Defendant responds referring to *Mamerow v. National Lead Co.* (1903), 206 Ill. 626, 69 N.E. 504, and *Roth v. Ahrensfeld* (1939), 300 Ill. App. 312, 21 N.E.2d 21, *aff'd* (1940), 373 Ill. 550, 27 N.E.2d 445, where in other contexts courts held that a director was under a duty to know of the matters contained in the records of his corporation.

■■ The "Minimum Capital Standard Agreement" setting forth the original capital requirements was such a basic document to the formation of the franchise that plaintiff as a director should have become familiar with it. It is also noteworthy that in his application for approval to invest given by plaintiff to defendant, he agreed not to rely on any representation or statement of defendant's agents prior to defendant's approval of his investment. Although this provision may not be contractually binding on plaintiff (*Eisenberg v. Goldstein* (1963), 29 Ill. 2d 617, 195 N.E.2d 184, *cert. denied* (1964), 377 U.S. 964, 12 L. Ed. 2d 735, 84 S. Ct. 1645), it did serve as a warning and bears upon the justification for his reliance. If the original representation of defendant that the franchisee met the defendant's minimum capital requirements was the only representation alleged, the trial court's ruling would clearly have been correct.

■■ A more serious question arises from the allegations that defendant

also made false representations from time to time that the franchisee met continuing financial requirements causing plaintiff to guarantee loans to the franchisee. It is further alleged that at the time plaintiff guaranteed these loans, the franchisee was making false financial reports, known by defendant to be false, but not so known by plaintiff. Under such circumstances, as in *MacAuley*, an examination of the franchisee's records by plaintiff might well have been fruitless. Based on the record before us, we cannot determine as a matter of law that plaintiff's reliance upon these representations was unjustified. It was error to dismiss the entire complaint for that reason.

■■ ■ Defendant correctly points out that for plaintiff to be able to recover compensatory damages, he must prove that the losses he suffered were reasonably foreseeable as a result of the false representations attributed to defendant. If the allegedly insufficient capital structure of the franchisee did not cause the loss, he could not recover. (Prosser, Torts §110, at 72 (4th ed. 1971); *Meenehan v. Rosenfield* (1925), 236 Ill. App. 4.) However, it was not necessary to allege that plaintiff's damages arose from the insufficiency of the original or continuing capital structure. The allegations of the proffered second amended complaint would have been a sufficient allegation of causation.

■ Defendant's motion to dismiss requested in the alternative that various portions of the first amended complaint be stricken. The trial court did not pass on this request and we express no opinion as to whether it should be granted.

The order of the circuit court of Macon County dismissing the first amended complaint is reversed. The case is remanded to that court to rule upon those aspects of the motion to dismiss not previously ruled upon and for further proceedings. We direct that plaintiff be permitted to amend the portion of the first amended complaint alleging causation.

Reversed and remanded, with directions.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The principal opinion appears to conclude that while the judgment below should be affirmed as to the asserted "original representation" that the Bishop corporation met the minimum capital requirements, the cause should be reversed and remanded as to "false representations" said to be made from time to time concerning the continuing financial requirements of the corporation with the result that plaintiff undertook to guarantee loans made to the corporation.

In *Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 25, 356 N.E.2d 653, 656, it is stated that:

"Fraud must be pleaded with specificity; and while a motion to dismiss admits allegations of fraud properly pleaded it does not admit conclusions of law or conclusions of fact unsupported by specific facts. (See *Zickur v. Irmiger*, 15 Ill. App. 3d 805, 807 (1973).) The pleadings before us do not allege sufficient specific facts to state all of the elements of a cause of action for fraud and deceit."

(See also *Bridge v. Newridge Chemical Co.* (1967), 88 Ill. App. 2d 337, 232 N.E.2d 551.) The amended complaint does not contain a single allegation of fact disclosing elements of fraud or negligence. There are only statements of conclusions of the pleader regarding unstated "representations" made at unspecified times within or over a period of some three years.

Such facts as are alleged or as otherwise appear in the record fail to show any duty of defendant to plaintiff. The pleadings and the record show that plaintiff elected to become a substantial shareholder in the Bishop corporation at a time substantially prior to the execution of the franchise agreement. Defendant dealt solely with the corporation and we find no allegation of fact that defendant had any occasion to deal with plaintiff as an individual.

*MacAuley v. Rickel* (1968), 96 Ill. App. 2d 283, 238 N.E.2d 603, is inapposite as the authority for the holding of this court. In that case defendant was dealing directly with plaintiff as the purchaser of the former's business. The strength of the opinion was in the fact that plaintiff alleged and proved specific representations of the present volume of business and the condition of the equipment to be purchased. The issue of plaintiff's negligence in failing to examine the books of the business was subordinate.

Facts which appear of record through documents obtained in discovery including the incorporation of Bishop, plaintiff's application as an investor, and an agreement between plaintiff and Mel Bishop disclosed that the plaintiff owned real estate and owned a vending machine company which operated in three states. The organization of the Bishop corporation shows that plaintiff participated therein as one of two shareholders, owning 50 shares of the value of $1000 per share while Mel Bishop owned 55 shares, each of that value. Thus, plaintiff necessarily knew that the paid-in capital was never more than $105,000. A shareholder's agreement between plaintiff and Mel Bishop, effective as of the date of the organization of the corporation prior to the execution of the franchise agreement, provided that plaintiff would serve as vice

president and director and that he was engaged to provide services as a consultant in the operation of the corporation. The shareholder's agreement provided that in such capacity plaintiff was to receive copies of all financial statements, audits, and reports.

By the terms of the shareholder's agreement, the corporation was to pay plaintiff the amount of interest due on the note of Mel Bishop to plaintiff and to make quarterly payments of $1250 toward the purchase of plaintiff's stocks. After a stated period such payments were to be made at the rate of 10 percent per annum upon the cost of plaintiff's stock until he had been repaid the amount of his original investment.

Finally, the shareholder's agreement provided that if the Bishop note was paid and plaintiff's stock redeemed by January 1, 1980, plaintiff was to receive a bonus of $25,000. If such payments and redemption were not completed by that date plaintiff was to receive a bonus of $50,000.

The performance of the corporation's contract to plaintiff personally as provided in the shareholder's agreement would seem to require a substantial interest in his observing the financial performance of the corporation.

In *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94, 169 N.E.2d 229, 231-32, it is said:

> "This court has pointed out accordingly that 'In all cases where it is sought to hold one liable for false representations, the question necessarily arises, whether, under all circumstances, the plaintiff had a right to rely upon them. In determining this question, the representations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of facts of such as he might have availed himself by the exercise of ordinary prudence.' *Dillman v. Nadlehoffer*, 119 Ill. 567, 577. The rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations. [Citations.]"

See also *National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 381 N.E.2d 15; *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 302 N.E.2d 201.

Plaintiff had the foresight to provide that the shareholder's agreement require that copies of reports, audits, and statements should be delivered to him. Now plaintiff seeks to plead that despite the fact that he was to be paid quarterly, the furnishing of the financial documents was a useless act for the reason that they were meaningless to him.

In sum, the record actually shows that plaintiff has not pleaded facts which show a right to rely upon any gossamer of "representation" which he undertook to allege.

The judgment of the trial court should be affirmed.