YUGOSLAV-AMERICAN CULTURAL CENTER, INC., Plaintiff-Appellant, v. PARKWAY BANK AND TRUST COMPANY, Indiv. and as Trustee, *et al.*, Defendants-Appellees.

First District (6th Division)    Nos. 1—94—4450, 1—95—0048 cons.

Opinion filed June 30, 1997.

Jon R. Flynn and Keith E. Morehead, both of Morehead & Flynn, of Chicago, for appellant.

Hinshaw & Culbertson, of Chicago (William J. Holloway and Joshua G. Vincent, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

This suit was brought as a four-count complaint by plaintiff, Yugoslav-American Cultural Center, Inc. (hereinafter YACC), an Illinois not-for-profit corporation. The principal defendants were YACC's president, Petar Pavlovic, and its secretary, Vucko Barjactarevic. YACC claimed that Pavlovic and Barjactarevic conveyed land and a building owned by YACC without membership approval. Further, YACC claimed that Pavlovic and Barjactarevic fraudulently sold the building to a corporation Barjactarevic controlled with defendant Branko Tupanjac. Although YACC's complaint sounded, in part, on claims of fraud, count I sought only to quiet title to the property. Following a bench trial on count I (action to quiet title) and count IV (conspiracy to defraud), the trial court found in favor of defendants and confirmed the sale based upon apparent authority principles. Only count I is currently on appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

YACC was initially formed on April 6, 1982, by combining three organizations, "Yugoslav Club of Chicago," "Crna Gora," and "Hu-

man Society Boka." At that time, the three clubs passed a resolution by their memberships approving the acquisition of the subject property, located at 3936 North Lincoln Avenue in Chicago. The building was a large commercial structure, which included stores and a meeting hall. The purchase price was $145,000. The plan was to have the building serve as the new organization's headquarters. YACC's bylaws mirrored Illinois law in providing that the building could only be sold upon proper vote of the entire membership. See Illinois General Not For Profit Corporation Act of 1986 (805 ILCS 105/111.60 (West 1994)).

YACC funded the purchase of its building with contributions from its members and from loans. In addition, certain members donated their labor to renovate the building. Defendant Pavlovic testified variously that his loans to YACC totaled $11,500, $15,000 and $17,000. He was impeached with an inconsistent prior statement that he lent YACC a total of $12,500. Pavlovic testified that his codefendant, Barjactarevic, loaned YACC a total of between $11,000 and $11,500.

Sometime prior to April 1990, YACC established a five-member special committee. The purpose of the committee was to explore the prospects of selling the property, to list the property for possible sale and thereby gain offers, and to provide information regarding sale prospects to YACC's membership for their consideration. The committee consisted of defendants Pavlovic and Barjactarevic, along with three other YACC members.

In April 1990, at a general meeting, the membership debated the prospects of marketing the property for sale. There was dissention among the membership and no resolutions by either the special committee or the members could be adopted.

Sometime after the April 1990 meeting, Barjactarevic commenced discussions about the building with his long-time friend, defendant Branko Tupanjac. Tupanjac was a Yugoslavian-American real estate developer involved in various projects, as well as an owner of several business entities involved in property management. Although Tupanjac was not a member of YACC, he was told that unless the building was purchased by him, all of his fellow countrymen who were members of YACC and who had invested in the project would lose their money due to the existence of unpaid tax liens on the property.

Sometime in 1991, Tupanjac agreed to purchase the building for a price of $130,000. He directed Barjactarevic to contact his attorney and family friend, Nicholas Duric, to arrange the sale. According to the testimony of Pavlovic, only he and Barjactarevic discussed the sale with Tupanjac. YACC's membership was never consulted.

Exactly what Pavlovic, Barjactarevic and Tupanjac understood about how the sale was to be accomplished was, and is, disputed by the parties. Each of the individual defendants testified that he understood very little about the sale and that Duric handled all the details.

Duric, as Tupanjac's attorney, testified that he prepared and presented Barjactarevic with various documents, including an application for the incorporation of an Illinois corporation known as "Golden Pine, Inc." The articles of incorporation for Golden Pine listed Barjactarevic and Tupanjac as Golden Pine's incorporators. Duric also drafted a land trust application the corpus of which was the property now at issue. Defendant Parkway Bank & Trust Company (Parkway) was designated as the trustee, Golden Pine the beneficiary and Barjactarevic was granted the sole power of direction. The land trust application further describes Duric as the attorney or agent for the trust and states that the approximate value of the property was $200,000. Duric also prepared a warranty deed in trust, the document that is now central to the dispute between the parties. Finally, Duric prepared the Illinois real estate transfer declaration and a Cook County real estate transfer declaration.

The warranty deed in trust prepared by Duric was signed by Barjactarevic and Pavlovic in their individual names, without designation of any corporate capacity. It named YACC as grantor and Parkway Bank & Trust Company, as trustee u/t/a 10066, as grantee. Barjactarevic testified that he signed the warranty deed at Tupanjac's direction and that he signed whatever Duric gave him. He did not tell any member of YACC that the property was being conveyed into a land trust. Pavlovic testified similarly that he did not know what the warranty deed in trust was when he signed it. In addition, Pavlovic testified that Barjactarevic never told him that the property was being sold to Golden Pine, only that Barjactarevic had found a purchaser for the property. The warranty deed in trust was recorded in the offices of the Cook County recorder of deeds on July 11, 1991.

In addition to the warranty deed, Barjactarevic signed a document purporting to be a corporate resolution of YACC that granted Barjactarevic and Pavlovic authority to sell the property. This document is not actually a corporate resolution but, rather, a certificate by Barjactarevic as YACC's secretary that a meeting of YACC's membership was held April 22, 1990, at which time YACC's membership agreed to sell the property. The parties now agree that no such meeting was ever held.

Tupanjac testified that he had never asked, and his attorney Duric never told him, whether Barjactarevic or Pavlovic had author-

ity to sell the property. He testified that he never considered the question of YACC's authority to sell the property because he did not believe it was his problem.

Tupanjac's attorney, Duric, testified that Tupanjac told him Barjactarevic and Pavlovic had proper authority to sell the property. Barjactarevic and Pavlovic confirmed this to Duric, who made no independent investigation as to the ownership of the building. Duric also testified that the only reason he had included Barjactarevic's name on the documents was because he wanted YACC's secretary on the papers in the event there was a problem with the property. Duric further stated that he declared the "Full Actual Consideration" for the sale on the Cook County and Illinois tax declarations as being $0 because he then believed the sale was tax exempt due to YACC's nonprofit status. These tax declarations list Barjactarevic as both "Seller or Agent" and as "Buyer or Agent."

In addition to the other documents, the evidence established that Barjactarevic and Pavlovic also signed a "Letter of Direction" that had been prepared by Duric. This document directed Duric to make repayment of various sums to certain individuals who had loaned money to YACC, as well as payments to release the tax liens. The payments to individuals were in various amounts, mostly between $500 and $1,000. Pavlovic testified that there was no meeting of the members concerning the distributions that were the subject of the "Letter of Direction" and that such a meeting was not necessary. Included were orders to Duric to pay Barjactarevic $25,000, to pay Pavlovic $28,000, and to pay himself $1,000.

On August 22, 1991, approximately $1^1/2$ months following the recording of the warranty deed in trust, Tupanjac and Barjactarevic, as "President Golden Pine, Inc.," executed an "Amendment to Trust Agreement," pursuant to an August 22, 1991, resolution of Golden Pine. The amendment states that the directors of Golden Pine had resolved to change the power of direction in the land trust from Barjactarevic, solely, to Barjactarevic and Tupanjac, jointly.

Three days later, Tupanjac wrote a check in the sum of $130,000, which he gave to Duric. Duric testified that he deposited the check in his business account and made disbursements of all but approximately $2,000 by check as indicated under the previously signed letter of direction. Of the members listed in the letter of direction, Duric testified that only those members who had returned to Yugoslavia were not repaid. Duric testified that this unpaid money remained in his business account. No check was ever written or given by Duric to YACC.

Barjactarevic testified that Tupanjac's payment of $130,000 was

received for Barjactarevic's transfer of 50 shares of the stock in Golden Pine, Inc., to Tupanjac.

Consistent with the letter of direction, Pavlovic testified that he received from Duric a check for $28,000. Duric further paid Barjactarevic the sum of $25,000 and wrote a check to himself in the amount of $1,000. He additionally wrote checks to other members in sums as set forth in the letter of direction. These checks were delivered to the named payees approximately the first or second weeks of September 1991. The named payees, members who had made prior loans or contributions to YACC, did not receive any other information regarding the checks, other than that some of the checks contained the memorandum "3936 N. Lincoln."

Plaintiff's witnesses testified that, in mid-September 1991, they became concerned that the property had been sold and thereupon sought information from both Barjactarevic and Pavlovic regarding the property. No details, however, were forthcoming. Barjactarevic testified that, after signing the warranty deed in trust, he spoke to no one about the transaction until the filing of the complaint by YACC, in March, 1992.

Tupanjac testified that, after purchasing the building, he learned there was dissention over the sale among some of YACC's membership. He stated that he offered to give the building back to them if they would return his money. He was later told that the dissention had been resolved and so he proceeded to make extensive repairs to the building, including repairing or upgrading its roof, heating, plumbing and electrical systems.

On October 10, 1991, Barjactarevic, as president of Golden Pine, executed a power to hypothecate, which permitted him and Tupanjac to use the property as collateral. On March 10, 1992, an appraisal was done on the property in connection with a mortgage of the property by defendant Parkway (as trustee in land trust No. 10066). Roppolo Realty, Inc., performed an appraisal of the property and determined the market value thereof to be in excess of $275,000. In fact, the appraisal states that, from an income approach, the property's value was then $304,000 and that the present annual income therefrom was approximately $66,000. This is despite the fact that the property was apparently vacant at the time of the appraisal.[1]

Parkway, as trustee under the land trust, directed Parkway, as mortgagee, to disburse the net mortgage proceeds ($192,486) to Bar-

---

[1]The income-approach valuation appears to have been based upon leases provided by Tupanjac to Parkway Bank & Trust Company, which Tupanjac testified were meant to reflect only potential income.

jactarevic and Tupanjac, essentially at Tupanjac's direction. Tupanjac testified he used these funds to reimburse himself for the work done in repairing the building.

In connection with the mortgage on the property, title insurance was procured through Attorneys' National Title Network, Inc., a title insurance company. Duric acted as attorney for the title insurance company with respect to necessary title search and related inquiry into past transactions. Duric testified, however, that he did not search the title.

After hearing rumors that the property had been sold and failing to receive informative responses from either Barjactarevic and Pavlovic, some of YACC's members sought legal counsel. Pursuant to a formal resolution adopted approximately one year after the sale and signed by a total of 44 members, YACC ratified commencement of suit in April of 1992.

As we have noted, at the time of this appeal, the trial court had passed only upon the first and fourth counts of YACC's complaint. YACC subsequently sought review only of count I, that count which sought to quiet title to the property. The only question now before us is, therefore, whether the property was lawfully conveyed by Pavlovic and Barjactarevic on either a theory of apparent authority or, as Tupanjac and Parkway now urge on appeal,[2] by implied ratification. It is not disputed that Pavlovic and Barjactarevic acted without the consent of YACC's members and therefore had no actual authority to convey the property. The trial court ruled that the warranty deed "conveyed good title to the grantee." The court accordingly found that the mortgage to Parkway "is a valid lien against the property."

■ We begin our analysis by acknowledging our limited standard of review. The role of the reviewing court in reviewing the trial court's determination of fact is to determine whether the trial court's findings are contrary to the manifest weight of the evidence. *Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 642, 498 N.E.2d 747 (1986). For a judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident from the record. *Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248, 256, 594 N.E.2d 1177 (1992). A reviewing court may not reverse a judgment merely because different conclusions could be drawn or because the reviewing court disagrees, so long as there is evidence to support the judgment. *Wilmette Partners*, 230 Ill. App. 3d at 256; *Ruggio*, 147 Ill. App. 3d at

---

[2]Of the defendants, only Tupanjac and Parkway have filed briefs in this appeal.

642. With this standard in mind, we first address defendants' argument that the sale of the property was proper under an apparent authority theory.

■ Every transaction involving an organization requires that the persons who undertake the transaction on behalf of the organization have the legal authority to do so. Authority may be actual or apparent. The trial court in the present case did not find that defendants Barjactarevic and Pavlovic had actual authority to dispose of YACC's property. Instead, the court found that Pavlovic and Barjactarevic, as president and secretary of YACC respectively, had the apparent authority to convey the property.

Apparent authority arises when an organization holds an agent out as possessing the authority to act on its behalf and a reasonably prudent person, exercising diligence and discretion, naturally assumes the agent has this authority in light of the organization's conduct. See *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523, 622 N.E.2d 788 (1993). The doctrine of apparent authority is based on the concept that if an organization, as principal, creates the appearance that a person is its agent, it will not be permitted to deny the agency if an innocent third party reasonably relied on the apparent agency, and is harmed as a result. *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213, 670 N.E.2d 632 (1996).

■ The burden of proving agency and the scope of authority is on the person seeking to charge the alleged principal. *Pyskaty v. Oyama*, 266 Ill. App. 3d 801, 641 N.E.2d 552 (1994); *Schoenberger v. Chicago Transit Authority*, 84 Ill. App. 3d 1132, 405 N.E.2d 1076 (1980). This burden is difficult to meet because, where the existence of an agency is an issue, the mere statements of the alleged agent, made outside the presence of the principal and not subsequently approved by him, do not establish the existence of the principal-agent relationship. *Proctor v. Tows*, 115 Ill. 138, 3 N.E. 569 (1885); *City of Chicago v. Jewish Consumptives Relief Society*, 323 Ill. 389, 154 N.E. 117 (1926). This is in recognition of the rule that the principal is the source of power and that the agent's authority can be proved only by tracing it to that source in some word or act of the alleged principal. *Merchants' National Bank v. Nichols & Shepard Co.*, 223 Ill. 41, 79 N.E. 38 (1906).

Defendant Parkway urges us to affirm the trial court's finding of apparent authority by relying upon YACC's failure to supervise Pavlovic and Barjactarevic. Parkway cites *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 502 N.E.2d 806 (1986), as instructive.

*Lundberg* involved syndication of breeding rights to a thoroughbred race horse. The owner of the horse, Church Farm, placed an advertisement in a trade journal offering syndication shares and

directing interested parties to contact the farm's resident general manager, Bagley. Bagley was to give prospective purchasers a preprinted form contract to sign. He had no actual authority to modify the contract or to sign the name of the farm's owner, Gil Church, to the agreement.

Notwithstanding the limitations on his actual authority, Bagley entered into a contract with plaintiff that contained provisions not found in the preprinted form and openly signed Church's name to it. When the farm could not meet its obligations under the agreement, plaintiff sued. Church Farm defended on the basis that Bagley had no authority to bind it to the modified syndication contract, but the trial court ruled in favor of plaintiff on the basis of Bagley's apparent agency. The appellate court affirmed, noting that Church Farm had approved the advertisement listing Bagley as Church Farm's manager and directing all inquiries to him. Church Farm permitted Bagley to live on the farm and Bagley handled all of the farm's operations. In addition, Bagley had been given actual authority to sign the form contract. The court concluded that this was "just the sort of 'holding out' of an agent by a principal that justifies a third person's reliance on the agent's authority." *Lundberg*, 151 Ill. App. 3d at 462.

Parkway argues that, just as Church Farm held out Bagley as being able to enter into the modified syndication agreement, YACC's membership held out Barjactarevic and Pavlovic as persons who were authorized to enter into the sale of its building. YACC elected Barjactarevic and Pavlovic as its officers and allowed them to have possession of the keys to the property, the corporate minute books and a list of members and creditors to whom the organization was in debt. Parkway argues that "Barjactarevic and Pavlovic were taking steps that, to an innocent third party, appeared motivated by a directive to salvage for the corporation's benefit whatever value remained in the property."

■ We do not agree that YACC's conduct in this case is comparable to Church Farm's conduct in *Lundberg*. We note that, in *Lundberg*, Church Farm did, in fact, offer the public syndication shares for sale and asked members of the public to contact Bagley to accept the offer. When it directed the public to deal with Bagley to close the sale, it created the situation in which it appeared to buyers that Bagley had the authority to modify the terms of sale. Here, in contrast, YACC never agreed to sell its building.

Nonetheless, even if we were to assume that Barjactarevic and Pavlovic were held out by YACC as having authority, none of the defendants here can claim to be innocent third-party purchasers, certainly not Barjactarevic, who was both buyer and seller.

As a corporate officer of YACC, Barjactarevic is charged with the knowledge of the corporation's bylaws and what was necessary to transfer YACC's property. See *Mamerow v. National Lead Co.*, 206 Ill. 626, 69 N.E. 504 (1903); *Roth v. Ahrensfeld*, 300 Ill. App. 312, 21 N.E.2d 21 (1939), *aff'd*, 373 Ill. 550, 27 N.E.2d 445 (1940). He knew that there had been no approval of the sale of the property by YACC's membership. As someone with knowledge of YACC's bylaws and what was required by it to sell the building, he cannot now rely upon the apparent authority doctrine as a basis for authorizing the sale.

As for Golden Pine, the beneficiary of the land trust, the evidence established that Barjactarevic served as both its incorporator and its president. Just as Barjactarevic is charged with knowledge of his lack of authority to sell the property, so too must that knowledge be imputed to Golden Pine. *A.T. Kearney, Inc. v. INCA International, Inc.*, 132 Ill. App. 3d 655, 477 N.E.2d 1326 (1985); *Campen v. Executive House Hotel, Inc.*, 105 Ill. App. 3d 576, 434 N.E.2d 511 (1982). Golden Pine is therefore precluded from arguing that it reasonably relied upon the apparent authority of Barjactarevic to sell the property.

As for Tupanjac, he testified that he knew the seller of the building was a Yugoslavian club and stated that he had never been told by anyone that Barjactarevic or Pavlovic had authority to sell the property on its behalf. Such admissions greatly undermine Tupanjac's claim that he reasonably or justifiably relied upon the apparent authority of either Barjactarevic or Pavlovic. See *Lawcock v. United States Trotting Ass'n*, 55 Ill. App. 2d 211, 218, 204 N.E.2d 802 (1965) (third person asserting apparent authority may not act negligently with regard to extent of agent's authority or blindly trust agent's statements); *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 391, 577 N.E.2d 1344 (1991) (third party has duty of reasonable diligence to ascertain scope of agent's authority).

In any event, knowledge of an attorney is treated as knowledge of, or at least knowledge imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client. *In re Marriage of Mierlak*, 100 Ill. App. 3d 228, 231, 426 N.E.2d 1010 (1981), citing *People ex rel. Rogers v. Elrod*, 35 Ill. App. 3d 26, 340 N.E.2d 598 (1975). As Tupanjac's attorney, Duric had the obligation to investigate any claims by Pavlovic or Barjactarevic regarding their authority to enter into the sale. The evidence establishes that he did not do so. Moreover, the tax declarations prepared by Duric establish that Duric knew Barjactarevic was to be both a corporate officer of YACC who authorized the sale and one of the initial purchasers of the property, a clear conflict of interest that

would undermine any actual authority Barjactarevic might have to authorize the sale. See *Winger v. Chicago City Bank & Trust Co.*, 394 Ill. 94, 114-16, 67 N.E.2d 265 (1946) (transaction in which corporate property is sold to corporate officer is presumed improper). Because his lawyer was on notice that Barjactarevic's authority to transfer the property was impaired, Tupanjac cannot now claim that he "reasonably relied" upon Barjactarevic's apparent authority. *Cf. In re Application of County Treasurer*, 30 Ill. App. 3d 235, 240, 332 N.E.2d 557 (1975) (prospective purchaser of real estate is chargeable with knowledge of facts inconsistent with claims of ownership by record owner). The nature of this real estate transaction should have set off in Duric every warning light and siren, demanding further scrutiny. Nonetheless, nothing further was done.

Finally, as the land trustee, Parkway has no interest in the property other than as a stakeholder for its beneficiary. As a mortgagee, Parkway has a security interest in the property only to the extent the mortgagor owned it. Its interest is derivative from the borrower's title. Therefore, Parkway cannot be the type of innocent party that would permit it to rely upon the apparent authority doctrine. In that we have rejected claims by Barjactarevic, Golden Pine and Tupanjac that they reasonably relied upon YACC's apparent authority in entering into the transaction, so too must we reject any similar claim by Parkway.

We turn to a second argument raised by Parkway and Tupanjac. In addition to the doctrine of apparent authority, Tupanjac and Parkway urge us to confirm the sale on grounds that YACC subsequently ratified the transaction. They note that, although the trial court did not specifically rely on the doctrine of ratification as the basis for its decision, a court of review may affirm a judgment on any ground that is apparent from the record. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 457 N.E.2d 9 (1983).

 Ratification of an unauthorized act is equivalent to an original authorization and confirms that which was originally unauthorized. *Illinois Armored Car Corp. v. Industrial Comm'n*, 205 Ill. App. 3d 993, 998, 563 N.E.2d 951 (1990). Since the rationale behind the doctrine of ratification is that the person ratifying obtains a benefit through the actions of someone who is acting in his behalf, then ratification will be found "[a]s long as the principal has full knowledge of the facts and has the choice of either accepting or rejecting the benefits of the transaction." *Swader v. Golden Rule Insurance Co.*, 203 Ill. App. 3d 697, 704-05, 561 N.E.2d 99 (1990).

As a basis for invoking ratification, Parkway and Tupanjac point out that YACC did not bring its lawsuit to set aside the transaction

until approximately one year after the purchase, after Tupanjac had made extensive repairs to the building, which were visible to "anyone who cared to look." They also note that all of the witnesses who testified on behalf of YACC admitted that they had taken money from Tupanjac and stated that they had not returned this money, even after learning that the proceeds of the sale had been used to repay them. Tupanjac and Parkway note that ratification has been found in cases in which the principal has retained the benefits of the transaction or where the beneficiary has argued that it is entitled to keep the proceeds. See *Karetzkis v. Cosmopolitan National Bank*, 37 Ill. App. 2d 484, 490-91, 186 N.E.2d 72 (1962); *Williamson v. McCann & Co.*, 2 Ill. App. 2d 42, 118 N.E.2d 42 (1954) (abstract of op.).

■ We find that the facts of this case do not support ratification for two reasons. First, it is apparent from the record that neither YACC nor its members received information regarding the material facts of the transaction until after suit had been filed. Prior to this time, defendants offered neither YACC nor its members any significant information about the sale. Although Tupanjac and Parkway argue that YACC could have checked the recorder of deeds office when its members first heard rumors that the building had been sold, a title search would not have informed the membership of such material information as the total consideration paid for the building or how the sale price was distributed by Tupanjac.

Second, to find ratification, it is necessary to find that YACC somehow accepted the benefits of the sale, not simply that individual members decided to keep the proceeds. To this extent, we reject Parkway's suggestion that YACC's witnesses who testified they kept the money after learning it represented proceeds of the sale were somehow "representatives" of YACC. As a corporation, YACC is an entity separate and distinct from its membership. Although Parkway and Tupanjac argue that Tupanjac's payments had the effect of benefitting the corporation by extinguishing YACC's debts, there is nothing in the record to suggest that YACC, as a legal entity, has ever recognized these payments. *Cf. Karetzkis*, 37 Ill. App. 2d at 490 (ratification found where principal took a position inconsistent with nonaffirmation of the transaction). Here, YACC took no action to ratify the transaction. Indeed, the evidence establishes that the *only* action undertaken by YACC subsequent to its meeting in April 1990 was to file suit. In the absence of evidence of some form of acceptance by YACC, however slight, there can be no basis upon which to find ratification.

After carefully reviewing the record and considering the arguments of the parties, we conclude that the trial court's decision with

respect to count I is against the manifest weight of the evidence and cannot be supported under either apparent authority or ratification principles. We therefore find that the trial court's decision awarding the property to Tupanjac must be reversed. If Tupanjac believes the equities of the case require that the money he has expended to purchase and renovate the building be returned to him, his remedy must come under some equitable theory such as quasi contract or *quantum meruit.* See *e.g., River Park, Inc. v. City of Highland Park,* 281 Ill. App. 3d 154, 667 N.E.2d 499 (1996); *Willens v. City of Northlake,* 19 Ill. App. 2d 316, 152 N.E.2d 486 (1958).

For the foregoing reasons, the judgment of the circuit court of Cook County with respect to count I of plaintiff's complaint is reversed. The warranty deed in trust challenged by plaintiff is hereby deemed void and the deed is ordered canceled of record.

Reversed.

GREIMAN, P.J., and QUINN, J., concur.