Benjamin Bridge, Jr., Appellant, v. Newridge Chemical Company, an Illinois Corporation, and Thomas E. Shine, Appellees.

Gen. No. 51,174.

First Judicial District.
September 20, 1967.
Rehearing denied October 13, 1967.

Irving Goodman, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Gerhard E. Seidel, J. Robert Geiman, and Peter M. Sfikas, of counsel), for appellees.

MR. PRESIDING JUSTICE CRAVEN delivered the opinion of the court.

The trial court dismissed plaintiff's verified complaint in equity upon defendant's verified motion and supporting affidavits and exhibits. The complaint sought specific performance of an alleged agreement between corporate defendant and plaintiff which would allow plaintiff to repurchase 500 shares of stock formerly owned by plaintiff which had been sold to the corporation on December 15, 1961, at $5 a share. Plaintiff's complaint acknowledges that the agreement does not provide for resale but alleges that the omission was a fraudulent act of the corporation committed by defendant Shine, its president.

The complaint sought ancillary equitable relief, but the chancellor dismissed the complaint in its entirety and entered judgment for the defendants.

Plaintiff Bridge and defendant Shine, subsequent to early 1957, were equal shareholders in defendant Newridge Chemical Company, each with 10,000 shares. On January 29, 1958, Shine and Bridge were members of the Board of Directors and Shine was president. Bridge was secretary-treasurer. At the annual meeting on that date, which both attended, the Board of the defendant corporation resolved that the corporation could buy 1,000 shares of plaintiff's stock at $5 per share with right of repurchase. This sale was consummated. On August 22, 1958, at a special meeting of the Board (same directors and officers), the corporation was authorized to purchase 500 shares of plaintiff's stock at the same price. This resolution did not provide for repurchase. Minutes of this Board meeting were signed by plaintiff as secretary.

On January 28, 1959, at a shareholders' meeting attended by plaintiff, the shareholders approved business activities of the corporation for the preceding year.

On December 15, 1961, a special meeting of the Board approved a resolution authorizing its president (Shine) and secretary (Bridge) to execute a stock purchase agreement between Bridge and the corporation in the event of Bridge's death. This agreement confirmed Bridge's holdings as of that date at 8,500 shares and denied the existence of agreements between Shine and Bridge, or either of them, and the company, other than that expressed in the agreement then made, respecting the disposition of Bridge's stockholdings in the corporation.

On the same date, December 15, 1961, Bridge executed a hold harmless and indemnity agreement in favor of the corporation, signed by himself, individually on his own behalf, and for the company as secretary, which confirmed his ownership of 8,500 shares, and which recited that Bridge had lost the certificates evidencing his ownership of 8,000 of these shares.

339

Plaintiff was a director and officer from April 5, 1957, through April 26, 1965, and did not demand the right to repurchase any of his former shares until April 26, 1965. Eventually, while this litigation was pending, he received 1,000 shares per the agreement of January 29, 1958. The other 500 shares are still the subject of this litigation.

Plaintiff's complaint proceeds upon the theory, in substance, that he was defrauded by Shine and the corporation by failure of the second resolution (August 22, 1958) to provide for repurchase of the 500 shares, that he has thereby lost equal participation with Shine as a stockholder in the corporation, and that a fiduciary and confidential relationship existed between himself and Shine during these transactions which was violated by Shine and the attorneys who represented Shine and the corporation in drafting for execution the agreement of August 22, 1958.

The purported reliance by the plaintiff in his complaint on a fiduciary or confidential relationship between himself and the defendant Shine is not documented by any allegations of fact tending to establish the relationship. Their status as stockholders in the same corporation does not establish the relationship of fiduciaries nor does it carry with it a high degree of responsibility of one acting toward the other. There is nothing pleaded by way of an agreement between these parties that this relationship should exist or that the plaintiff was under any disability which would cause Shine to have a duty toward Bridge to watch out for his interests.

Bridge was a director and officer of the corporation and as such participated in and contributed to the corporate meetings resulting in the agreements sought to be avoided, without objection. Under these circumstances, the documents of which he complains were as much the result of his acts as a corporate official as the acts of

any other individual acting on behalf of the corporation, regardless of who prepared the documents or chose the exact language.

The complaint is silent regarding any irregularity in the meeting at which the agreement to sell the stock was executed. It is silent also regarding acts constituting deception, duress or coercion by Shine or anyone else acting in behalf of the corporation in inducing or requiring Bridge to execute the agreement. Whatever the reason plaintiff had to sell these 500 shares to the corporation, there is no allegation that Shine or the corporation procured that position.

Plaintiff pleaded that the agreement was prepared by Shine's attorneys, who were also attorneys for the corporation, and argues that this bivalent position makes the agreement presumptively fraudulent. If there were ambiguities in the agreement, rules of construction would require a construction of the agreement adverse to the preparer in the event extrinsic evidence was not available to explain the ambiguity but this rule of construction does not apply here. There is no ambiguity in this agreement, and one is not created because a separate agreement of an earlier date contains provisions this one does not have. In any event, the relationship pleaded between the attorneys and Shine and the corporation does not in and of itself raise the specter of fraud sufficiently for any court to presume it exists.

Plaintiff pleads that when the agreements were made he was in a "weak and debilitated condition" and "he placed great reliance on the integrity, the fairness and honesty of his partner for many years," Shine.

Nothing in the complaint gives a clue to the actual relationship of Bridge and Shine outside the corporation which would support the conclusion that Bridge and Shine were partners and had, between themselves, the duties and obligations to each other of partners. Nothing in the

complaint gives a clue to the physical or mental condition of the plaintiff during the time the agreements were made except the conclusionary language just quoted. However, the exhibits before the court relating to the questioned transactions reveal plaintiff's active presence and participation in the corporate meetings at which the documents were approved and executed. The reliance by plaintiff, therefore, upon these allegations as being sufficient to impose a duty on the defendants to respond to the complaint is misplaced. ·

██ Fraud is not presumed. The facts constituting the fraud must be clearly and explicitly alleged. Anderson v. Anderson, 339 Ill 400, 171 NE 504 (1930). The same rule applies to the existence of a confidential or fiduciary relationship. Nechanicky v. Morton Park Federal Savings & Loan Ass'n, 32 Ill App2d 444, 178 NE2d 197 (1st Dist 1961). In addition, if the requisite relationship exists, facts showing an abuse of the relationship must be pleaded. Aaron v. Dausch, 313 Ill App 524, 40 NE2d 805 (1st Dist 1942) ; Skidmore v. Johnson, 334 Ill App 347, 79 NE2d 762 (1st Dist 1948).

█ The complaint is deficient on all these grounds and the trial court was correct in dismissing it.

Affirmed.

SMITH and TRAPP, JJ., concur.