THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, *et al.*, Plaintiffs-Appellants, v. E&E HAULING, INC., *et al.*, Defendants-Appellees.

First District (3rd Division) Nos. 1—89—1763, 1—89—2792, 1—90—0173 cons.

Opinion filed July 24, 1991.

30

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellants.

Daniel S. Mathless, of Chicago, for appellees Hi-Gate Erectors, Inc., Highway Safety Corporation, Lo-Mar Contracting Corporation, Ruben Melesio, and Betty Kitterman.

Jenner & Block, of Chicago (Thomas W. McNamara, Thomas K. McQueen, Norman M. Hirsch, and Robert P. Zapinski, of counsel), for appellees E & E Hauling, Inc., American Environmental Construction Company, Edward F. Heil, George R. Schiewe, James R. Nugent, and Lois A. Nugent.

McNella & Griffin, of Chicago (Gary L. Griffin, of counsel), for appellees Peter A. Palumbo, Joseph L. Palumbo, Richard Zawacki, Dan L. Tessarolo, and Leininger-Mid-States Paving Co., Inc.

Hopkins & Sutter, of Chicago (William J. McKenna, Jr., and David B. Goroff, of counsel), for appellees Gateway Construction Company, Inc., and George N. Weiland, Jr.

Gomberg & Sharfman, Ltd., of Chicago (Ray Ostler, of counsel), for appellee Tom Alberto.

JUSTICE WHITE delivered the opinion of the court:

This case involves three appeals from orders of the circuit court dismissing plaintiffs' 21-count complaint and denying leave to file an amended complaint. Plaintiffs are the Illinois Attorney General and the Illinois Department of Transportation (IDOT). They argue that the trial court's orders were erroneous and constituted an abuse of discretion.

## FACTS

Although this case is before us on motions to dismiss the complaint, its procedural history is somewhat complicated and must be set forth at length.

There are 23 defendants in this action: E&E Hauling, Inc.; its successor, American Environmental Construction Company; Edward Heil, individually and as a director of E&E and American Environmental; George Schiewe, individually and as an agent of E&E; Leininger-Mid-States Paving Company; Peter Palumbo, individually and as an agent of Leininger; Richard Zawacki, individually and as an agent of Leininger; Joseph Palumbo, individually and as a director of Leininger; Dan Tessarolo, individually and as an agent of Leininger; Coke Contracting, Inc.; Sam Alberto, individually and as president of Coke; Tom Alberto, individually and as an agent of Coke; T.C. Schreiner, individually and as vice-president of Nu-Way Contracting Corporation; Lo-Mar Contracting Corporation; Highway Safety Corporation; Gateway Construction Corporation; Hi-Gate Erectors, Inc; Ruben Melesio, individually and as president of Lo-Mar, Highway, and Hi-Gate; Lois Nugent, individually and as an officer of Lo-Mar; Betty Kitterman, individually and as an agent of Lo-Mar; George Weiland, individually and as an officer of Gateway and Hi-Gate; Robert R. Anderson Company; and James Nugent, individually and as an agent of Lo-Mar and the Anderson Company. Paschen Contractors International; Paschen Contractors, Inc.; Gust K. Newberg Construction Company, Inc., and Paschen-Newberg Joint Venture also were named as defendants. However, they entered into a settlement agreement with plaintiffs and are not parties to this appeal.

All of the defendants are engaged in the contracting business. During 1984 and 1985, defendants performed work on several State construction projects. All of the contracts for these projects contained minority business enterprise (MBE) provisions, requiring the use of minority contractors.

In June 1988, plaintiffs commenced this action against defendants, charging them with fraud, misrepresentation, breach of contract, unjust enrichment, and violations of the Consumer Fraud and Deceptive Business Practices Act (CFA) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) and the Uniform Deceptive Trade Practices Act (UDTPA) (Ill. Rev. Stat. 1987, ch. 121½, par. 311 *et seq.*). Plaintiffs alleged that defendants wrongfully and fraudulently attempted to avoid compliance with the MBE provisions contained in the contracts as well as State and Federal policy requiring the use of MBEs.

Counts I through XV of the complaint concern work done for the Metropolitan Fair and Exposition Authority (MFEA) in connection with the McCormick Place expansion project. Counts XVI through XVIII concern repairs to the Eisenhower and Lincoln expressways. Counts XIX through XXI charge certain defendants with violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. §1961 *et seq.* (1988)).

Several of the defendants filed motions to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). On November 29, 1988, a hearing was held on the motions filed by E&E, American Environmental, Gateway, Lo-Mar, Schiewe, Heil, Melesio, Kitterman, and James and Lois Nugent. After hearing arguments, the trial court ordered the dismissal of counts I through IX and counts XIV through XVII on the ground that they failed to state a cause of action and because the Attorney General lacked standing to assert the claims they contained. Counts XIX through XXI, brought under the RICO Act, were dismissed on the ground that Illinois courts lacked jurisdiction to enforce the Act.

In oral comments accompanying its dismissal of the complaint, the court noted that the claims in counts I through IX and counts XIV and XV arose from contracts between the MFEA and certain defendants and that the Attorney General was not a party to those contracts. Pointing out that the MFEA was a government unit with the power to sue and be sued on its own behalf and that the MFEA had made no effort to file suit or join in the present litigation, the court stated that the Attorney General should not be allowed to "second guess" the MFEA's decision not to sue. These comments were incorporated into a written order entered December 1, 1988.

At the close of the hearing, plaintiffs requested leave to file an amended complaint. Leave was granted and plaintiffs' first amended complaint was filed on January 31, 1989. Although the Attorney General had represented at the November 29 hearing that the MFEA would be joining in the action, the Attorney General and IDOT were the only plaintiffs named in the amended complaint.

Over the next several months, motions to dismiss the amended complaint were filed by all of the defendants, with the exception of the Anderson Company. At a hearing on defendants' motions, held May 30, 1989, the trial court ordered the dismissal of all of plaintiffs' claims, except those asserted against Anderson. In granting the motions to dismiss, the court stated that it was unable to discern any meaningful differences between the amended complaint and the origi-

nal complaint, which it had found the Attorney General did not have standing to bring.

In addition to finding that the Attorney General had failed to cure the standing defect, the trial court found that defects remained with respect to the fraud and misrepresentation claims. The court stated that the claims against Leininger, Gateway, and Weiland failed to state a cause of action because there were no allegations that they had any duty to correct the alleged misrepresentations made by Lo-Mar and Hi-Gate. The court also found that no damages arose from the alleged fraud because defendants satisfactorily completed the work they contracted to perform. The court added that allegations that defendants' actions prevented *bona fide* MBEs from receiving public work were insufficient to establish damage.

The trial court also found that plaintiffs again failed to state a claim for relief under an unjust enrichment theory because there were express contracts between the parties and because the claims in those counts could not be asserted by the Attorney General. The statutory fraud counts were also found to be lacking because none of the alleged wrongful practices affected consumers and there were no allegations of injury.

Finally, the trial court found that the validity of the MBE set-aside provisions was seriously compromised by the United States Supreme Court's decision in *City of Richmond v. J.A. Croson Co.* (1989), 488 U.S. 469, 102 L. Ed. 2d 854, 109 S. Ct. 706. The trial court noted that under the *City of Richmond* case, set-asides must be in response to a pattern and practice of discrimination by the agency of government which is involved in the contract and stated that the Attorney General had made no such claim with regard to the MFEA.

Following the trial court's ruling, plaintiffs requested leave to file a second amended complaint, stating that such a complaint would include allegations of the constitutionality of the MBE program, allegations that defendants' conduct was ongoing, and allegations linking Leininger, Gateway, and Weiland to the unlawful practices of Lo-Mar and Hi-Gate. In denying leave, the trial court stated that none of the deficiencies found in the original complaint had been overcome by the first amended complaint; it did not believe these deficiencies could be overcome by a new pleading. Plaintiffs then requested and were granted a Rule 304(a) (134 Ill. 2d R. 304(a)) finding that the court's order was final and appealable.

On June 14, 1989, Anderson filed its motion to dismiss the counts of the first amended complaint asserted against it. Two weeks later,

plaintiffs filed their notice of appeal from the orders of December 1, 1988, and May 31, 1989.

At a hearing on August 17, 1989, the trial court granted Anderson's motion to dismiss. In granting the motion, the court again made reference to *City of Richmond*, stating that the lack of any allegation that the set-asides were instituted to remedy past discrimination was fatal to plaintiffs' complaint.

The trial court found that the breach of contract and fraud claims alleging that Anderson misrepresented the MBE status of a subcontractor were deficient because, at the time in question, the subcontractor was a fully accredited MBE and because there was no allegation that Anderson assisted the subcontractor in wrongfully obtaining certification. The trial court also found that plaintiffs' claim of possible losses to unspecified *bona fide* MBEs was an insufficient allegation of injury.

A notice of appeal from the August 17 order was filed in the appellate court on August 24, 1989. On that date, plaintiffs also filed in the circuit court a pleading entitled "Statement of Proposed Additions to Proposed Second Amended Complaint." In an introduction to this pleading, plaintiffs stated that it contained "additions to the first amended complaint which would have been incorporated as part of a second amended complaint had the trial court not denied leave to file that document."

On August 28, plaintiffs filed an appeal from the August 17 order with the Illinois Supreme Court. In their notice of appeal, plaintiffs claimed that a direct appeal to the supreme court was warranted because the trial court's order declared two Federal statutes unconstitutional.

On September 7, 1989, defendants filed a motion to dismiss the statement of proposed additions, arguing that plaintiffs were improperly attempting to supplement the record on appeal. Defendants requested that the statement be stricken from the record because it was filed after plaintiffs filed their notice of appeal and had not been presented to or considered by the trial court. Defendants' motion was granted, and on October 13, 1989, plaintiffs filed a notice of appeal seeking reversal of the trial court's order striking the statement.

The appeal from the order striking plaintiffs' statement of additions was consolidated with plaintiffs' appeal from the trial court's May 1989 order dismissing the complaint as to all defendants except Anderson. Subsequently, the supreme court dismissed plaintiffs' appeal from the August 17 order. The appeal was transferred to this

court and consolidated with the two appeals already pending before us.

After the filings of the appeals in this court, the United States Supreme Court entered its decision in *Tafflin v. Levitt* (1990), 493 U.S. 455, 107 L. Ed. 2d 887, 110 S. Ct. 792, holding that State courts have concurrent jurisdiction over civil RICO Act claims. Thus, plaintiffs' RICO Act claims which were dismissed for lack of jurisdiction must be remanded to the trial court for further consideration.

## OPINION

As we stated above, the complaint in this action contains 21 counts against 25 defendants. Plaintiffs have made allegations of unjust enrichment (counts VII and VIII), common law fraud and misrepresentation (counts I, III, V, X, XII, XIV, and XVI), breach of contract (count XVIII), and violations of the CFA and UDTPA (counts II, IV, VI, IX, XI, XIII, XV, and XVII).

In seeking reversal of the trial court's dismissal of their complaint, plaintiffs argue that the trial court erred in finding that the Attorney General lacked standing and in finding that the CFA was inapplicable. Plaintiffs also argue that the court erred in finding that the allegations in the complaint failed to state causes of action for misrepresentation, unjust enrichment, and breach of contract. Finally, plaintiffs argue that the court erred in denying leave to file an amended complaint and in striking their statement of proposed additions. We affirm in part and reverse in part.

## I

In its order dismissing the complaint, the trial court held that the Attorney General lacked standing to assert the common law claims and that the CFA was inapplicable. We discuss these issues first.

## STANDING

■■ Defendants asserted, and the trial court found, that the Attorney General lacked standing to assert the claims for common law misrepresentation set forth in counts I, III, V, X, XII, and XIV of the complaint. The trial court found that the misrepresentation claims arose under the contracts between the MFEA and defendants. Noting that the MFEA was a governmental unit with the authority to contract and sue and be sued in its own name, the court stated that the MFEA's failure to join in the suit indicated that it did not believe that the contracts had been violated. The court also noted that plaintiffs had not alleged that the MFEA was unwilling to sue or that a de-

mand to sue had been made on the MFEA. For these reasons, the court ruled that the Attorney General did not have the authority to assert claims for misrepresentation in connection with the MFEA contracts.

The MFEA is a public corporation created pursuant to section 3 of the Metropolitan Fair and Exposition Authority Act (Ill. Rev. Stat. 1987, ch. 85, par. 1223). In arguing that the Attorney General does not have standing to represent the MFEA, defendants acknowledge that the Illinois Supreme Court has held that, as the State's chief legal officer, the Attorney General also represents the State's departments and agencies. (See *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 372 N.E.2d 50; *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130.) However, relying on the supreme court's decision in *People ex rel. Board of Trustees of the University of Illinois v. Barrett* (1943), 382 Ill. 321, 46 N.E.2d 951, defendants argue that where the General Assembly has delegated the right to sue and be sued to a municipal corporation, the Attorney General no longer has standing to act on behalf of that municipal corporation. We disagree.

In *Barrett*, the University of Illinois filed a *mandamus* action seeking to prevent the Attorney General from interfering with the university's attempts to appoint its own legal counsel. The Attorney General maintained that he was the sole legal advisor, counsel, and attorney for the university and its trustees and that the university had no authority to employ other counsel. The supreme court held that as a public corporation the university had the authority to select and employ its own counsel and that the Attorney General was in error in assuming that he was the "sole" legal representative of the university. Although *Barrett* contains broad language regarding the Attorney General's authority to act on behalf of public corporations, we believe the court's decision in that case must be limited to its facts.

In *Hunt v. Chicago & Dummy Ry. Co.* (1886), 20 Ill. App. 282, *aff'd* on this point, *Hunt v. Chicago Horse & Dummy Ry. Co.* (1887), 121 Ill. 638, 13 N.E. 176, this court stated that the Attorney General is the proper representative of the people of the State in all courts of jurisdiction and that he has the duty of interposing for the protection and preservation of the rights of the public whenever those rights are invaded, and there is no other adequate or available means of redress. 20 Ill. App. at 290.

In *Fergus v. Russel*, the supreme court stated that "the Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which

the State is the real party in interest, except where the constitution or a constitutional statute may provide otherwise. With this exception, only, he is the sole official adviser of the executive officers and of all boards, commissions and departments of the State government." *Fergus v. Russel,* 270 Ill. at 342.

While *Fergus* and *Hunt* preceded the supreme court's decision in *Barrett,* the holding in *Fergus* later was repeated in *Environmental Protection Agency v. Pollution Control Board.* There the supreme court stated that the Attorney General's powers encompass advising and representing the State and all its agencies in all legal proceedings. (*Environmental Protection Agency v. Pollution Control Board,* 69 Ill. 2d at 401.) In addition, the supreme court has described the decision in *Barrett* as holding that the university was not "required" to accept the Attorney General as its legal adviser. (*Board of Trustees of the University of Illinois v. Industrial Comm'n* (1969), 44 Ill. 2d 207, 254 N.E.2d 522.) Based on these decisions, we find that *Barrett* does not preclude the Attorney General from acting on behalf of a public corporation where there has been an invasion of public rights and there is no other adequate or available means of redress.

In the present case, plaintiffs have alleged that the MFEA is funded with State monies and that the taxpayers of the State have invested over $145 million in MFEA facilities and operations. Plaintiffs have accused defendants of defrauding the MFEA and improperly obtaining MFEA funds. The MFEA, unlike the University of Illinois in *Barrett,* does not appear to have taken any steps to obtain any legal representation, nor does it appear that the MFEA has taken any steps to redress the alleged fraud. Accordingly, we find that in light of the undeniable interest of the State and its people in the proper allocation of public funds and the apparent lack of any other adequate means of redress, the Attorney General is not precluded from asserting the fraud claims set forth in the complaint.

## CONSUMER FRAUD ACT

■ As a basis for its dismissal of the CFA claims, the trial court found that the claims failed to state a cause of action because none of the alleged wrongful practices affected consumers and because there was no allegation of injury. Plaintiffs argue on appeal that the court erred in finding that an allegation of harm to consumers was necessary. We agree.

Section 11a of the CFA provides that the statute "shall be liberally construed to effect the purposes thereof." (Ill. Rev. Stat. 1987, ch. 121½, par. 271a.) In section 2, the statute states that its purpose

is to prohibit "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) In section 1 the term "trade and commerce" is defined as the "sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated" and includes "any trade or commerce directly or indirectly affecting the people of this State." Ill. Rev. Stat. 1987, ch. 121½, par. 261.

In *People ex rel. Fahner v. Walsh* (1984), 122 Ill. App. 3d 481, 461 N.E.2d 78, the appellate court held that an allegation of harm to consumers is not required where suit is brought by the Attorney General. The court added that the CFA protects any person damaged by unfair or deceptive practices. (122 Ill. App. 3d at 486.) In addition, both Federal and State courts have found that the CFA is applicable to cases involving either public injury or conduct that affects consumers generally. *Newman-Green, Inc. v. Alfonzo-Larrain R.* (N.D. Ill. 1984), 590 F. Supp. 1083; *Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 510 N.E.2d 1260.

Here, plaintiffs have alleged that, under the provisions of their contracts with the MFEA and IDOT, defendants were required to employ *bona fide* MBEs and that to avoid compliance with these contract provisions defendants illegally employed sham MBEs. Plaintiffs contend that defendants' illegal conduct violated Federal and State public policy and caused injury to legitimate MBEs.

There is no question that defendants' contracts with the MFEA and IDOT fall within the statutory definition of trade and commerce. Nor is there any question that a failure to comply with the MBE provisions of the contracts would constitute a violation of the public policy of this State. (See Ill. Rev. Stat. 1987, ch. 85, par. 1243.1; Ill. Rev. Stat. 1987, ch. 127, par. 132.601.) Accordingly, we find that plaintiffs have adequately alleged a public injury in connection with the conduct of trade and commerce as required by the CFA.

In summary, we find that the trial court erred in holding that the Attorney General lacked standing to assert claims arising out of defendants' contracts with the MFEA and in finding that the CFA was inapplicable absent an allegation of injury to consumers.

## II

As a further basis for its orders granting defendants' motion to

dismiss, the trial court found that allegations in the complaint failed to state a cause of action. We agree that many of the counts are insufficient.

Counts I and II concern lien waivers submitted by E&E, the prime contractor for work done in connection with the McCormick Place expansion project. Plaintiffs allege that while E&E's lien waivers represented that Nu-Way, Leininger, and Lo-Mar were paid $40,000, $250,000, and $300,000, respectively, they actually were paid $37,600, $318,261.46, and $348,652.71.

In count I, plaintiffs allege that these misrepresentations were made to prevent disclosure of E&E's noncompliance with the MBE provisions and that, as a result of the misrepresentations, *bona fide* MBEs were deprived of MFEA work, law-abiding prime contractors were prevented from obtaining MFEA work, and E&E improperly received payment from the MFEA. In count II, plaintiffs claim that E&E's conduct constituted an unfair method of competition within the meaning of the CFA and the UDTPA.

■ "Fraudulent misrepresentation" is defined as the false statement of a material fact made to induce another party to act in reliance thereon and resulting in damage to the party who so relies. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319; *Hale v. Hale* (1978), 57 Ill. App. 3d 730, 373 N.E.2d 431.) To state a cause of action for fraud, a plaintiff must allege facts from which fraud is the necessary or probable inference. (*Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912.) Fraud is not presumed; a complaint must clearly and explicitly set forth sufficient facts to support a conclusion of fraud. *Bridge v. Newridge Chemical Co.* (1967), 88 Ill. App. 2d 337, 232 N.E.2d 551.

■ A complaint brought under the CFA must allege a false statement of material fact made in the conduct of any trade or commerce with the intent to induce others to rely thereupon. (See Ill. Rev. Stat. 1987, ch. 121½, par. 262.) In addition, a CFA complaint must be pleaded with the same specificity as an action for common law fraud. See *Spengler v. V & R Marathon, Inc.* (1987), 162 Ill. App. 3d 715, 516 N.E.2d 787.

■ In the present case, counts I and II of plaintiffs' complaint contain no allegations supporting the conclusion that the representations contained in the waivers were fraudulent or that injury resulted from the MFEA's reliance on them. Plaintiffs claim that the misrepresentations in the waivers resulted in the loss of work for MBEs and prevented the discovery of defendants' alleged noncompliance with

the MBE provisions. However, plaintiffs have not alleged any facts explaining why this was so. In the absence of any facts supporting plaintiffs' claims of fraud and injury, the counts were properly dismissed.

We next consider the propriety of the trial court's ruling that counts III and IV of plaintiffs' complaint fail to state a cause of action.

Count III alleges that the site preparation contract between E&E and the MFEA contained MBE provisions requiring minority businesses to perform a "commercially useful function" in the project and that pursuant to those provisions, Edward Heil signed an affidavit on behalf of E&E in which he represented that Lo-Mar would furnish and deliver stone, provide dirt removal, and perform cartage at an agreed price of $300,000, and that Nu-Way would furnish and install chain link fencing and perform sewer work at an agreed price of $40,000. According to count III, at the time he signed the affidavit, Heil knew that non-MBEs would perform Lo-Mar's and Nu-Way's work.

Count III further alleges that Lo-Mar and Nu-Way subcontracted all of their work out to non-MBEs; that, of the $348,652.71 paid by E&E to Lo-Mar, $335,078.83 was paid over to Leininger, a non-MBE; and that the $37,600 paid to Nu-Way also was paid over to a non-MBE. Count III also alleges that Leininger, E&E, Nu-Way, Lo-Mar, and their agents knowingly withheld and concealed their noncompliance with the MBE programs, that their representations were made to induce the MFEA to pay E&E, and that the MFEA reasonably relied on the representations in making payments to E&E.

As we stated above, a fraudulent misrepresentation is the false statement of a material fact made to induce reliance and which does in fact induce reliance, resulting in injury. (*Charles Hester Enterprises*, 114 Ill. 2d at 288.) In count III, plaintiffs have alleged that defendants falsely stated their compliance with the MBE provisions of their contract with the MFEA, that the false statements were made to induce the MFEA to make payments that otherwise would not have been made, and that MFEA relied on the false statements in awarding the site preparation contract to E&E and in making payments to E&E. We find that these allegations are sufficient in stating a cause of action for misrepresentation.

We reach a similar conclusion with regard to count IV, where plaintiffs reallege the facts contained in count III in an attempt to state a cause of action under the CFA. As discussed previously, a statutory fraud complaint, like a common law fraud complaint, must al-

lege a false statement of material fact made with the intent to induce reliance. (*Mack v. Plaza DeWitt Limited Partnership* (1985), 137 Ill. App. 3d 343, 484 N.E.2d 900.) We have already concluded that count III sufficiently alleges a false statement of material fact made with the intent to induce reliance and, because the allegations of count III are repeated in count IV, we must conclude that plaintiffs have sufficiently alleged a false statement for purposes of the CFA.

We now consider counts V, VI, and VII of the complaint.

■■ These counts are based upon a letter submitted by Edward Heil of E&E to the MFEA. In counts V and VI, plaintiffs charge that the submission of the letter amounted to a fraudulent misrepresentation and violated the CFA and UDTPA. In count VII, plaintiffs charge that the misrepresentations were used to obtain a payment of $133,353.62 from the MFEA and that, therefore, E&E and Heil were unjustly enriched in that amount.

The letter in question, attached as exhibit 21 to plaintiffs' complaint, contains the following chart:

| | | Base Contract | Change Order | Total |
|---|---|---|---|---|
| | | $1,298,000.00 | $977,908.86 | $2,275,908.86 |
| E&E Hauling, Inc. | (labor) | 762,543.00 | 178,480.00 | 941,023.00 |
| Nu-Way (WBE) | (labor) | 12,800.00 | NONE | 12,800.00 |
| Lo-Mar (MBE) | (labor) | NONE | NONE | NONE |
| E&E Hauling, Inc. | (material) | 195,457.00 | 549,428,86 | 744,885.86 |
| Leininger-Mid-States | (material) | NONE | 250,000.00 | 250,000.00 |
| Nu-Way (WBE) | (material) | 27,200.00 | NONE | 27,200.00 |
| Lo-Mar (MBE) | (material) | 300,000.00 | NONE | 300,000.00 |

According to plaintiffs, this chart states that (1) Lo-Mar received $300,000 for its work, (2) Leininger did no work on the base contract, and (3) Leininger received a total of $250,000. Plaintiffs claim the first statement is false because Lo-Mar performed no work on the project; the second statement is false because Leininger did perform work on the project; and the third statement is false because Leininger received more than $250,000. Plaintiffs also allege that the statement that Nu-Way received $40,000 is false because Nu-Way did no work.

Although plaintiffs interpret the letter as containing the above-described "false" statements, it is apparent that the letter does not support plaintiffs' interpretation.

Contrary to plaintiffs' allegations, the letter does not state that Lo-Mar received $300,000 for its "work." The letter states only that Lo-Mar was paid $300,000 for "materials"; it does not indicate that

Lo-Mar received any amount for labor. The letter also does not state that Leininger performed no work on the base contract; in fact, the letter is silent concerning what, if any, work was performed by Leininger and the amounts received therefor. Finally, with respect to Nu-Way, plaintiffs allege only that Nu-Way did no work on the project, not that the letter misstates the amount Nu-Way was paid.

Plaintiffs argue that we are required to accept their interpretation of the letter because all inferences must be drawn in their favor on a section 2—615 motion to dismiss. (*United Air Lines, Inc. v. CEI Industries of Illinois, Inc.* (1986), 148 Ill. App. 3d 332, 499 N.E.2d 558.) However, this is not a matter of resolving conflicting inferences in plaintiffs' favor. Rather, the letter plainly does not contain the statements that plaintiffs claim it contains.

Where there are discrepancies or contradictions between allegations in a complaint and the facts as shown in an exhibit, the exhibit will control, and a motion to dismiss will not admit allegations in the complaint that conflict with facts in the exhibit. (*Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill. 2d 267, 137 N.E.2d 487; *Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104; *Lictorio, Inc. v. Sears, Roebuck & Co.* (1942), 317 Ill. App. 375, 46 N.E.2d 130.) Accordingly, we find that the letter fails to support the allegations of counts V, VI, and VII and that these counts were properly dismissed.

Turning to counts VIII and IX of the complaint, we find that they also fail to state causes of action.

■ In count VIII, plaintiffs allege that "as part of its requirements on the MFEA site preparation job, E&E had to legally dispose of all materials resulting from excavation operations." Plaintiffs claim that despite these "requirements," E&E illegally dumped excavation spoil in the Du Page County Forest Preserve's Mallard Lake landfill and in a landfill leased by Terra Excavating, Inc. Plaintiffs allege that by this illegal dumping E&E, which received public monies, "violated the public trust in the use of public monies and public lands and has been [*sic*] unjustly enriched." Plaintiffs request that E&E be required to make restitution of these "public monies" to the Du Page County Forest Preserve and Terra Excavating, Inc.

It is well settled that a claim for unjust enrichment cannot stand where an express contractual agreement exists between the parties. (*Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 477 N.E.2d 1249.) In the present case, paragraph 32 of count I, which plaintiffs incorporated into count VIII, contains the following allegations:

"E&E was awarded the first prime contract for the construction of the Annex. The contract was for site preparation work which consisted of demolition, clearing, excavation, removal of unsuitable material, fencing and the placement of stones ***."

Thus, it is clear from the face of the complaint that a contract existed between E&E and the MFEA and that the removal of excavation spoil was a part of that contract. Accordingly, we find that count VIII was properly dismissed.

We reach a similar conclusion with regard to count IX. In count IX, plaintiffs reallege the facts of count VIII and allege that defendants' conduct constituted a violation of the CFA. According to count IX, after promising to legally dispose of excavation debris, E&E concealed the fact that it was illegally dumping the material in the Mallard Lake and Terra landfills. Count IX states that "E&E intended that MFEA would believe that E&E was legally disposing of the excavation debris." We do not believe that the allegations in count IX are sufficient to allege a cause of action under the CFA.

As we have already stated, a pleading under the CFA must allege a false promise concerning a material fact made with the intent that others rely upon that material fact. (See Ill. Rev. Stat. 1987, ch. 121½, par. 262.) Although count IX alleges that E&E intended that the MFEA "believe" that E&E was disposing of the materials legally, there is no allegation that E&E intended to induce the MFEA to act in reliance on its representations. Therefore, the count was properly dismissed.

We next consider counts X and XI of the complaint. In these counts, plaintiffs charge defendants Coke Contracting and Leininger-Mid-States Paving with misrepresentation and violations of the CFA.

Plaintiffs allege that Coke, a company hired to perform hauling work for Leininger, sent four invoices to Leininger seeking payment for hauling stone to McCormick Place and that, upon receipt of these invoices, Leininger's president, Joseph Palumbo, informed Coke that no payment would be made unless the invoices were altered to state that the stone was hauled to the Eisenhower expressway. Plaintiffs further allege that Coke made the changes, received payment, and subsequently sent Leininger 12 additional invoices requesting payment for stone hauled to the Eisenhower.

■ In count X, plaintiffs claim that "Leininger and Coke misrepresented where the materials, if any, were hauled" and that "[a]s a direct and proximate result of defendants' alteration of the invoices, MFEA, [IDOT], and possibly other governmental agencies apparently have paid for materials they never received." Plaintiffs add that these

misrepresentations were material. In count XI, plaintiffs reallege the facts in count X, charging that Coke and Leininger's conduct violated the CFA and the UDTPA.

We have already discussed the requirements for pleading fraud and violations of the CFA. It is apparent that the allegations in counts X and XI do not meet these requirements.

As we pointed out above, a common law or statutory fraud complaint must clearly and explicitly set forth facts supporting the conclusion that there has been a false statement and that the misstatement concerned a material fact. (*Mack v. Plaza DeWitt Limited Partnership*, 137 Ill. App. 3d at 350; *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684, 467 N.E.2d 610.) Here, not only are there no facts alleged in support of plaintiffs' conclusion that the information contained in the invoices submitted by Coke and Leininger was material, there also are no allegations that the information was false. For these reasons, we affirm the trial court's dismissal of these counts.

We also affirm the trial court's dismissal of counts XII and XIII, in which plaintiffs again attempt to plead common law misrepresentation and violations of the CFA. The allegations in these counts concern check vouchers submitted by Leininger in response to subpoenas issued by the Attorney General requesting documents concerning the delivery of stone to McCormick Place.

Plaintiffs claim that after submitting the vouchers, Leininger submitted a second set of documents and that these documents "represent[ed] that the materials referred to in [the vouchers] were not in fact delivered to the McCormick Place Annex job site, but instead were used on various highway construction projects." Plaintiffs further allege that Leininger's agents "knew or were reckless in not knowing that the materials referred to in [the vouchers] were used on various highway construction projects rather than having been delivered [*sic*] to the McCormick Place Annex job site" and that "as a result of the foregoing conduct, MFEA, [IDOT], and possibly other governmental agencies apparently paid for materials they never received."

In counts XII and XIII, as in counts X and XI, plaintiffs have set forth no facts supporting their conclusion that the representations in the vouchers were material. In addition, while counts XII and XIII allege that defendants knew or should have known that the materials referred to in the vouchers were not used at the McCormick Place site, they contain no claim that the representations were made to induce reliance, as required by section 2 of the CFA. (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) Finally, there is no claim

that anyone relied on defendants' representations or was injured by them, as required to state a claim for common law misrepresentation. (See *Kinney v. St. Paul Mercury Insurance Co.* (1983), 120 Ill. App. 3d 294, 458 N.E.2d 79.) Therefore, we find once again that plaintiffs have failed to state causes of action for common law or statutory fraud.

█ We now consider counts XIV through XVIII of the complaint. The allegations in counts XIV and XV concern Hi-Gate Erectors, a purported MBE subcontractor hired to perform work on the McCormick Place Annex; Gateway Construction, a nonminority firm which owned 49% of Hi-Gate; and Highway Safety Corporation, which owned 51% of Hi-Gate. Highway Safety, also purported to be an MBE, was owned by minority businessman Ruben Melesio. The allegations in counts XVI, XVII, and XVIII concern three IDOT contracts awarded to the Leininger and Anderson companies for work on the Lincoln and Eisenhower expressways.

In counts XIV and XV, plaintiffs allege that Melesio and Hi-Gate were required to submit an affidavit to the MFEA listing all contributions and other investment made by Hi-Gate's owners and all previous denials of MBE certification. Plaintiffs allege that the affidavit submitted by Melesio and Hi-Gate inaccurately stated Gateway's investment in Hi-Gate and failed to state that Hi-Gate was denied certification by the State of Illinois, the City of Chicago, IDOT, and the Wisconsin Department of Transportation on several occasions in 1980, 1981, 1982, and 1985.

Plaintiffs contend that Gateway, Hi-Gate, Highway Safety, Weiland, and Melesio had a duty to disclose their knowledge of the noncompliance with the MBE requirements, that they wrongfully withheld and concealed the facts that would have disclosed the noncompliance, that they acted to deceive and defraud the MFEA and to induce the MFEA's reliance, and that the MFEA relied on defendants' representations in awarding the contract and in making payments.

In counts XVI, XVII, and XVIII, plaintiffs allege that the IDOT contracts awarded to Leininger and Anderson incorporate the MBE requirements mandated by Federal law and that, under these requirements, the MBEs involved must be independent; the ownership and control by minorities or women must be real, substantial, and continuing; and the MBE must perform a commercially useful function in the work of the contract.

Plaintiffs further allege that to feign compliance with the MBE requirements, Anderson and Leininger represented that Lo-Mar

Contracting was a *bona fide* MBE, when, in fact, it was operated by Anderson, a nonminority corporation. Plaintiffs allege that the representations were intended to deceive the MFEA and to induce it to make payments it otherwise would not have made and that the contract would not have been awarded or the payments made had the MFEA been aware of defendants' noncompliance with the MBE requirements.

Counts XIV and XVI charge defendants with misrepresentation, while counts XV and XVII charge violations of the CFA. Count XVIII charges Leininger and Anderson with breach of contract. From our earlier discussion on pleading requirements, it is apparent that counts XIV through XVII contain sufficient allegations of false representations made to induce reliance to state a claim under the CFA and sufficient allegations of false statements, reliance, and injury to state a claim under the common law. *Charles Hester Enterprises*, 114 Ill. 2d at 288; Ill. Rev. Stat. 1987, ch. 121½, par. 262.

██ It is also apparent that the allegations of count XVIII are sufficient to state a cause of action for breach of contract. A complaint for breach of contract must allege the existence of a contract between plaintiffs and defendants, performance by plaintiffs of the conditions imposed on them by the contract, breach of contract by defendants, and the existence of damages as a result of the breach. *Quake Construction, Inc. v. American Airlines, Inc.* (1989), 181 Ill. App. 3d 908, 537 N.E.2d 863, *aff'd* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.

██ Here, plaintiffs have alleged that IDOT entered into contracts with Leininger and Anderson; that IDOT performed all its obligations under the contracts; that Leininger and Anderson breached the contracts by misrepresenting their compliance with the MBE requirements; and that IDOT suffered damage because it would not have awarded the contracts to Leininger and Anderson or made payments to them if it had been aware of the misrepresentations. We find that these allegations are sufficient to defeat defendants' motion to dismiss.

In arguing that the dismissal of counts XIV and XV should be affirmed, Gateway and Weiland contend that plaintiffs cannot show that they were involved in any misrepresentations made by Hi-Gate or Highway Safety. Anderson argues that the dismissal of counts XVI, XVII, and XVIII should be affirmed because at the time of contracting Lo-Mar was a certified MBE and, therefore, Anderson did not misrepresent Lo-Mar's status. These arguments are without merit.

■■■ In counts XIV and XV, plaintiffs alleged that Hi-Gate was not independent of Gateway; that Hi-Gate was operated by Gateway; and that Hi-Gate used Gateway's labor force, equipment, and supervisory personnel. Plaintiffs also allege that Weiland, who was president of Gateway and vice-president and director of Hi-Gate, was responsible for establishing, supervising, directing, and controlling the business activities of both Hi-Gate and Gateway. These allegations, which must be taken as true (*Johnson v. Franzen* (1979), 77 Ill. 2d 513, 397 N.E.2d 825), sufficiently plead involvement by Gateway and Weiland. Whether Gateway and Weiland were so involved in Hi-Gate's activities is a question of fact which cannot be resolved on a motion to dismiss. *Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311.

Similarly, counts XVI, XVII, and XVIII contain allegations that despite its MBE certification, Lo-Mar was not independent of Anderson, that Anderson was aware that Lo-Mar was not a genuine MBE, and that Anderson failed to disclose this information. We find that these allegations are sufficient to overcome Anderson's claim that it was entitled to rely on Lo-Mar's MBE status.

In summary, we find that the trial court properly dismissed counts I, II, V, VI, VII, VIII, IX, X, XI, XII, and XIII for failure to state a cause of action. However, we find that the trial court erred in finding that counts III, IV, XIV, XV, XVI, XVII, and XVIII failed to state causes of action and we reverse the dismissal of these counts.[1]

III

In comments at the hearings on defendants' motions to dismiss the second amended complaint, the trial court suggested that the Supreme Court's decision in *City of Richmond* was "fatal" to plaintiffs' complaint. In *City of Richmond*, the Supreme Court held that State and municipal entities may enact and enforce MBE set-aside programs only when the programs are supported by specific findings of past discrimination.

---

[1]Defendants argue on appeal that plaintiffs improperly pleaded violations of the CFA and the UDTPA in the same counts in violation of sections 2—603 and 2—613 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—603, 2—613.) We decline to consider defendants' argument as it relates to counts IV and XIV, the remaining CFA and UDTPA counts, because of defendants' failure to raise the argument before the lower court.

Several defendants have argued before this court that the MBE set-asides contained in the MFEA and IDOT contracts are unenforceable. Defendants assert that there is no evidence of past discrimination and, therefore, plaintiffs' MBE provisions do not meet the requirements set forth in *City of Richmond*. In response, plaintiffs contend that defendants' argument amounts to an affirmative defense, which cannot be decided on a section 2—615 motion to dismiss. We agree.

 A section 2—615 motion to dismiss is directed toward defects that appear on the face of the pleadings and, in deciding such a motion, a trial court may consider only the legal sufficiency of the allegations set forth in the complaint. *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360.

 The Supreme Court's decision in *City of Richmond* did not invalidate all minority set-aside programs. Rather, as we stated above, the Court held that such programs must be based on evidence of past discrimination and a finding that the programs are necessary to remedy the present effects of such discrimination. It is clear that the question of whether there is evidence of past discrimination to support the MBE set-aside provisions contained in plaintiffs' contracts raises factual matters that go beyond the face of the pleadings. Accordingly, the trial court erred in supposing it could dismiss plaintiffs' complaint based on the Supreme Court's decision in *City of Richmond*.

IV

Lastly, we consider plaintiffs' contentions that the trial court erred in denying them leave to file a second amended complaint and in striking their "Statement of Proposed Additions to Proposed Second Amended Complaint." We affirm both the trial court's order denying leave to amend and its order striking the statement of proposed additions.

 The question of whether to grant or deny leave to amend a complaint is within the trial court's discretion, and the court's decision will not be reversed unless there is an abuse of that discretion. (*Lordahl v. Mauro* (1982), 109 Ill. App. 3d 478, 440 N.E.2d 989.) In determining if there has been an abuse of discretion, a reviewing court will consider whether allowing an amendment would further the ends of justice. (*Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 502 N.E.2d 1053.) A trial court does not abuse its discretion in refusing leave to

amend where no amendment is presented with the motion and the trial court is given no particular indication of the contents of the proposed amendment. *Botti v. Avenue Bank & Trust Co.* (1982), 103 Ill. App. 3d 1052, 432 N.E.2d 295.

 Here, plaintiffs failed to tender an amended complaint with their motion for leave to amend. Although plaintiffs made an oral list of allegations that might be included in a second amended complaint, we find that in a case involving 23 defendants and a 21-count complaint, plaintiffs' statement was wholly insufficient to apprise the trial court of the contents of a proposed amended complaint. Accordingly, we find no abuse of discretion in the trial court's denial of leave to amend.

As for plaintiffs' statement of proposed additions, we note that it was filed long after plaintiff requested and received a Rule 304(a) finding and nearly two months after the filing of plaintiffs' notice of appeal. For this reason, we find no error in the trial court's decision to strike plaintiffs' statement. See *Hecht v. Hecht* (1977), 49 Ill. App. 3d 334, 364 N.E.2d 330; *Butler v. Palm* (1962), 36 Ill. App. 2d 351, 184 N.E.2d 633.

CONCLUSION

The order of the circuit court dismissing plaintiffs' complaint is affirmed as to counts I and II and counts V through XIII; the portions of the order dismissing counts III and IV, counts XIV through XVIII and the RICO counts are reversed; the order denying plaintiffs leave to file a second amended complaint is affirmed; and the order striking plaintiffs' statement of proposed additions is affirmed. The cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded for further proceedings.

CERDA, P.J., and RIZZI, J., concur.